STATEN ISLAND EDISON CORPORATION, Respondent, *v.* MILO R. MALTBIE et al., Individually and Constituting the Public Service Commission of the State of New York, Appellants.

Argued February 19, 1947; decided May 22, 1947.

*Philip Halpern, George H. Kenny* and *Samuel R. Madison* for appellants. I. Certiorari is the exclusive method of reviewing rate orders of the Public Service Commission under the law of this State. There is no principle of State law under which a suit in equity may be maintained to challenge a rate order as confiscatory. Certiorari is the traditional and exclusive method of reviewing quasi-judicial determinations in this State. (*Mooers* v. *Smedley,* 6 Johns. Ch. 28; *Hyatt* v. *Bates,* 40 N. Y. 164; *New York State Electric & Gas Corp.* v. *Maltbie,* 266 N. Y. 521; *Dairy Sealed, Inc.,* v. *Ten Eyck,* 248 App. Div. 352.) II. The rate orders of the Public Service Commission are quasi-judicial determinations and are reviewable as such in certiorari. (*People ex rel. Central Park North & East River R. R. Co.* v. *Willcox,* 194 N. Y. 383; *Matter of Village of Saratoga Springs* v. *Saratoga Gas Co.,* 191 N. Y. 123; *People ex rel. Steward* v. *Railroad Comrs.,* 160 N. Y. 202; *Matter of New York Edison Co.* v. *Maltbie,* 244 App. Div. 685, 271 N. Y. 103; *Matter of New York Water Service Corp.* v. *Water P. & C. Comm.,* 283 N. Y. 23.) III. The right to maintain a suit in equity cannot be based upon the so-called legislative nature of the rate-making function. (*People ex rel. Consol. Water Co.* v. *Maltbie,* 275 N. Y. 357; *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38; *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210; *People ex rel. Central Park North & East River R. R. Co.* v. *Willcox,* 194 N. Y. 383; *Interstate Commerce Comm.* v. *Louisville & Nashville R. R. Co.,* 227 U. S. 88.) IV. The claim of confiscation does not entitle a utility company to a broader review of the issues of fact than that afforded in certiorari. There is no principle of State law under which a public utility company is entitled to an independent determination by the courts of the issues of fact involved in a rate case. (*People ex rel. Consol. Water Co.* v. *Maltbie,* 275 N. Y. 357; *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38.) V. The scope of review in certiorari is adequate to deal with the issue of confiscation as well as with all other issues in a rate case. (*Matter of New Rochelle Water Co.* v. *Maltbie,* 248 App. Div. 66; *Matter of Rockland Light & Power Co.* v. *Maltbie,* 241 App. Div. 122;

*Consolidated Edison Co.* v. *National Labor Relations Bd.,* 305 U. S. 197; *Matter of Stork Restaurant, Inc.,* v. *Boland,* 282 N. Y. 256.) VI. It would be contrary to the settled policy of this State to allow the courts to redetermine independently the issues of fact decided by the commission in a rate case. (*People ex rel. N. Y. & Queens Gas Co.* v. *McCall,* 219 N. Y. 84, 245 U. S. 345; *Niagara Falls Power Co.* v. *Water P. & C. Comm.,* 267 N. Y. 265; *People ex rel. Consol. Water Co.* v. *Maltbie,* 275 N. Y. 357.) VII. The New York statutory system, under which rate proceedings are conducted by the commission in accordance with quasi-judicial procedure and are reviewed by the courts in certiorari, satisfies all the requirements of the due process clause as construed by the United States Supreme Court. (*People ex rel. Consol. Water Co.* v. *Maltbie,* 275 N. Y. 357; *Matter of Helfrick* v. *Dahlstrom Metallic Door Co.,* 256 N. Y. 199, affd. *sub nom. Dahlstrom Metallic Door Co.* v. *Industrial Board of New York,* 284 U. S. 594; *United States* v. *Carolene Products Co.,* 304 U. S. 144; *San Diego Land & Town Co.* v. *Jasper,* 189 U. S. 439; *Van Dyke* v. *Geary,* 244 U. S. 39; *San Diego Land & Town Co.* v. *National City,* 174 U. S. 739; *City of Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1.) VIII. The *Ben Avon* case (*Ohio Valley Co.* v. *Ben Avon Borough,* 253 U. S. 287), as construed and relied upon by the plaintiff, is no longer the law. Under recent decisions of the United States Supreme Court, there is no Federal requirement that the State provide for the independent judgment of a court upon the underlying questions of fact relating to the issue of confiscation. (*Railroad Commission* v. *Oil Co.,* 310 U. S. 573, 311 U. S. 570; *Power Comm.* v. *Pipeline Co.,* 315 U. S. 575; *Power Comm.* v. *Hope Gas Co.,* 320 U. S. 591; *National Labor Relations Bd.* v. *Jones & Laughlin Steel Corp.,* 301 U. S. 1; *Myers* v. *Bethlehem Shipbuilding Corp.,* 303 U. S. 41; *Hudson & Manhattan R. R. Co.* v. *United States,* 313 U. S. 98.)

*Charles E. Murphy,* Corporation Counsel (*Andrew Bellanca* and *John Suglia* of counsel), for City of New York, *amicus curiæ,* in support of appellant's position. Plaintiff's remedy, if it be aggrieved by the commission's rate order, is to a review by certiorari, not a trial *de novo,* since proceedings under **article 78** of the Civil Practice Act satisfy all requirements

of due process and permit plaintiff to have the issue of confiscation determined therein.

*Jackson A. Dykman, Edmund B. Naylon, Royal F. Shepard* and *George Foster, Jr.,* for respondent. I. In the fixing of rates the commission performs a legislative function. (*Matter of International Ry. Co.* v. *Public Service Comm.,* 226 N. Y. 474; *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210; *Matter of Helfrick* v. *Dahlstrom Metallic Door Co.,* 256 N. Y. 199; *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92; *Baer Bros.* v. *Denver & R. G. R. R.,* 233 U. S. 479; *Arizona Grocery Co.* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 284 U. S. 370.) II. Respondent is entitled to a full and complete review of the orders of the commission in a plenary action. The court cannot be circumscribed in exercising its own independent judgment on both the law and the facts where confiscation is involved. Certiorari precludes the exercise by the court of its supreme function in dealing with the issue of confiscation. (*Municipal Gas Co.* v. *Public Service Comm.,* 225 N. Y. 89; *People ex rel. Municipal Gas Co.* v. *Public Service Comm.,* 224 N. Y. 156; *Consolidated Water Co.* v. *Maltbie,* 167 Misc. 269; *People ex rel. New York & Queens Gas Co.* v. *McCall,* 219 N. Y. 84; *Matter of New Rochelle Water Co.* v. *Maltbie,* 248 App. Div. 66; *Matter of Pennsylvania Gas Co.* v. *Public Service Comm.,* 211 App. Div. 253; *People ex rel. Adirondack P. & L. Corp.* v. *Public Service Comm.,* 200 App. Div. 268; *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38; *Prendergast* v. *New York Tel. Co.,* 262 U. S. 43; *Long Island Water Corp.* v. *Public Service Comm.,* 23 F. Supp. 834; *Crowell* v. *Benson,* 285 U. S. 22; *Ohio Valley Co.* v. *Ben Avon Borough,* 253 U. S. 287.) III. The constitutional guarantees of judicial review of administrative action have not been affected by the Federal cases cited by appellants. (*Consolidated Water Co.* v. *Maltbie,* 167 Misc. 269; *Matter of New Rochelle Water Co.* v. *Maltbie,* 248 App. Div. 66; *Matter of Pennsylvania Gas Co.* v. *Public Service Comm.,* 211 App. Div. 253; *Estep* v. *United States,* 327 U. S. 114; *Williams* v. *North Carolina,* 317 U. S. 287; *Mahnich* v. *Southern S. S. Co.,* 321 U. S. 96; *Ohio Valley Co.* v. *Ben Avon Borough,* 253 U. S. 287; *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210; *Railroad Commission* v. *Oil Co.,* 310 U. S. 573, 311 U. S. 614, 311 U. S.

570; *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38; *Power Comm.* v. *Pipeline Co.,* 315 U. S. 575; *Power Comm.* v. *Hope Gas Co.,* 320 U. S. 591.) IV. Appellants' proposal to change the law respecting review in the nature of certiorari has been repeatedly rejected by the courts of this State and does not meet constitutional requirements. (*People ex rel. Consol. Water Co.* v. *Maltbie,* 275 N. Y. 357; *Matter of Fahey* v. *Wright,* 256 App. Div. 474; *People ex. rel. S. & U. H. R. R. Co.* v. *Betts,* 55 N. Y. 600; *People ex rel. Manhattan Ry.* v. *Barker,* 152 N. Y. 417; *Matter of Pennsylvania Gas Co.* v. *Public Service Comm.,* 211 App. Div. 253.) V. A plenary action in equity presents no barrier to efficient regulation. (*People* v. *Hudson River Connecting R. R. Corp.,* 228 N. Y. 203; *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38; *Stark* v. *Wickard,* 321 U. S. 288.)

THACHER, J. The Public Service Commission appeals pursuant to leave granted by the Appellate Division, Third Department, upon certified questions of law, from an order of the Appellate Division and a judgment thereon which reversed orders of the Special Term, Albany County, granting defendants' motion for judgment on the pleadings and dismissing the complaint. The Appellate Division granted a temporary injunction against enforcement of the commission's order prescribing permanent rates and struck out four separate defenses in defendants' answer. The following questions were certified:

"1. Is the plaintiff entitled to maintain this action?

"2. Does the complaint state facts sufficient to constitute a cause of action?"

In a prior suit beween the same parties, brought to enjoin temporary rates established by the commission's order of May 27, 1943, we affirmed a dismissal of the complaint (*Staten Island Edison Corp.* v. *Maltbie,* 267 App. Div. 72, affd. 292 N. Y. 611). The present action is a plenary action in equity to enjoin the enforcement of the commission's order of May 27, 1943, prescribing temporary rates and of the commission's final order of June 19, 1945, prescribing final rates to be charged on and after July 1, 1945.

Allegations of ultimate fact held sufficient to show confiscation in *Prendergast* v. *N. Y. Tel. Co.* (262 U. S. 43) are substantially

followed in the complaint. Plaintiff alleges that the commission's orders result in confiscation of its property in violation of its constitutional right to receive a fair return upon the value of its property devoted to public use, specifically alleging the cost of its property devoted to such use within the State, the cost of its reproduction, its reasonable value, the maximum rate of return which the rates prescribed will provide, measured in relation to the cost and also in relation to the fair and reasonable value of its property, and that such rates will not afford a reasonable return on such cost or value. These allegations, which for the purpose of pleading must be taken at face value, show returns of 3.07% on depreciated cost and 2.42% on reasonable value and clearly support the claim of confiscation (*Prendergast* v. *N. Y. Tel. Co., supra*). Thus the complaint sufficiently alleges confiscation in violation of plaintiff's constitutional right — a question which of course may be determined only after the proofs are in (*Municipal Gas Co.* v. *Public Service Comm.,* 225 N. Y. 89, 98).

The questions certified involve plaintiff's right to maintain the action in equity and the sufficiency of the allegations to warrant injunctive relief. Each of these questions depends upon the adequacy or inadequacy of the remedy available to plaintiff by a certiorari order under article 78 of the Civil Practice Act to review the rate orders of the Public Service Commission.

In *People ex rel. Consol. Water Co.* v. *Maltbie* (275 N. Y. 357, appeal dismissed 303 U. S. 158) we held (pp. 369–370): " Upon the hearing of an order of certiorari to review a determination of the Commission, the jurisdiction and power of the Appellate Division are defined and limited by section 1304 [now section 1296] of the Civil Practice Act. These powers do not include an independent consideration by the court of any question of fact."

This was a rate case and we declared, in regard to the scope of our review (p. 366): " In this court the determination of the Commission upon any question of fact is not open to review. We may reverse a decision or annul a determination only for erroneous determination of a question of law, and after careful consideration of the appellant's argument, we find no errors there. Upon every point where the determination of the Commission is challenged we find that there is evidence to sup-

port the conclusion of the Commission and room for the exercise of choice."

This is the established rule in certiorari proceedings to review rate orders of the Public Service Commission and it is applied generally in certiorari proceedings to review determinations of administrative boards (*People ex rel. N. Y. & Queens Gas Co.* v. *McCall*, 219 N. Y. 84, affd. 245 U. S. 345; *Niagara Falls P. Co.* v. *Water P. & C. Comm.*, 267 N. Y. 265, 278; *Matter of Weber* v. *Town of Cheektowaga*, 284 N. Y. 377, 380; *Matter of Newbrand* v. *City of Yonkers*, 285 N. Y. 164, 177–178; *Matter of Miller* v. *Kling*, 291 N. Y. 65; *Matter of Bolani* v. *O'Connell*, 296 N. Y. 871).

Faced with this limitation upon the jurisdiction and power of the Appellate Division in certiorari proceedings to review a determination of the commission, and seeking an independent consideration by a court of the facts upon which its claim of constitutional right is predicated, plaintiff has brought this plenary action in equity to enjoin confiscation of its property used and useful in the public service, claiming that as a matter of constitutional right it is entitled to a fair opportunity of submitting the issue of confiscation to a judicial tribunal for determination upon its own independent judgment as to both law and facts (*Ohio Valley Co.* v. *Ben Avon Borough*, 253 U. S. 287).

When the *Consolidated Water Co.* case (*supra*) went to the Supreme Court of the United States, the water company sought to raise this question. The Supreme Court held (pp. 159–160): "Appellant contends that it is entitled to the exercise of the independent judgment of a court as to the law and the facts with respect to the issue of confiscation and that such a review has not been accorded because of the limitations imposed by the state practice in certiorari proceedings. 275 N. Y. at p. 370 * * *. Appellant has no standing to raise this question as appellant itself sought review by certiorari and has not invoked the plenary jurisdiction of a court of equity and it does not appear that this remedy is not available under the state law."

We are now confronted with that question.

The *Ben Avon* case (*supra*) has never been **overruled; on the contrary the principle that where constitutional rights of**

liberty or property are involved due process requires independent judicial determination of the constitutional question in the courts, has been reaffirmed. (*St. Joseph Stock Yards Co.* v. *United States*, 298 U. S. 38, 51–52; *Crowell* v. *Benson*, 285 U. S. 22, 46, 60; *Baltimore & Ohio R. R. Co.* v. *United States*, 298 U. S. 349, 368–369; *State Comm.* v. *Wichita Gas Co.*, 290 U. S. 561, 569.)

In *Phillips* v. *Commissioner* (283 U. S. 589, 600), BRANDEIS, J., writing for the court, stated the general rule regarding administrative findings and the exception as follows: "Save as there may be an exception for issues presenting claims of constitutional right, such administrative findings on issues of fact are accepted by the court as conclusive if the evidence was legally sufficient to sustain them and there was no irregularity in the proceedings." (See, also, *Tagg Bros.* v. *United States*, 280 U. S. 420, 443.)

An analogy is found in the right to judicial determination on habeas corpus of a claim of citizenship when one is held for deportation under the immigration laws of the United States (*Ng Fung Ho* v. *White*, 259 U. S. 276).

There would indeed be a very drastic limitation upon the constitutional powers of the Supreme Court of the State if it may not enjoin an unconstitutional deprivation of property because of an administrative determination of constitutional right supported by administrative findings of fact believed to be wrong upon a fair consideration of the record. The remedy by certiorari proceedings being thus limited is inadequate in the protection of constitutional right and, in view of the decisions of the Supreme Court of the United States, is lacking in due process. Under these circumstances the Supreme Court of New York as a constitutional court may entertain an action for an injunction, the statutory remedy by certiorari being inadequate.

We are constrained to conclude that the plaintiff is entitled to maintain this action and that the complaint states facts sufficient to constitute a cause of action.

In reaching this conclusion we are not unmindful of the arguments advanced on grounds of convenience, well stated by FOSTER, J., in the court below: " Obviously this is an important question in the field of public utility regulation. It is a simple

matter to allege confiscation in any rate matter, and if such an allegation is sufficient to invoke the jurisdiction of equity then the way is open for separate trials of the same issues in every rate case; first before the commission, and later at an Equity Term of the Supreme Court. Something rather extraordinary is required to justify a procedure so protracted and cumbersome." (270 App. Div. 55, 65.)

We find no compelling necessity for a trial *de novo* of every rate case in which confiscation is claimed. The illegality in such cases is confiscation or deprivation of property without due process of law. The legality of the rate must primarily depend upon the proceedings before the commission, and the record of those proceedings will of necessity be before the trial court since the statute authorizes determination in the first instance by the commission, and the courts may not properly consider the question without knowledge of the administrative record (*Railroad Commission* v. *Oil Co.*, 310 U. S. 573; *Manufacturers Ry. Co.* v. *United States*, 246 U. S. 457, 489–490). This appears to be the practice when injunction suits such as this are brought in the Federal courts. We see no reason for departing from that practice in the trial of this action. We need not now consider under what circumstances, if any, the court may be justified in receiving additional proofs or newly discovered evidence.

We find nothing inconsistent with such a practice in the oil and gas proration cases: *Thompson* v. *Consolidated Gas Corp.* (300 U. S. 55), *Railroad Commission* v. *Oil Co.* (310 U. S. 573, *supra*), *Railroad Commission* v. *Oil Co.* (311 U. S. 570), or in the cases arising under the Federal Natural Gas Act: *Power Comm.* v. *Pipeline Co.* (315 U. S. 575), *Power Comm.* v. *Hope Gas Co.* (320 U. S. 591).

The Power Commission cases (*supra*) arose upon petitions to review orders of the Federal Power Commission under subdivision (b) of section 19 of the Natural Gas Act (U. S. Code, tit. 15, § 717r, subd. [b]). In discussing the scope of review in these cases, Chief Justice STONE, writing for the court in *Power Comm.* v. *Pipeline Co.* (*supra*) said (p. 585): " By long standing usage in the field of rate regulation, the ' lowest reasonable rate ' is one which is not confiscatory in the constitutional sense. [Citations.] Assuming that there is a zone of reasonableness within which the Commission is free to fix a rate varying

in amount and higher than a confiscatory rate [citations], the Commission is also free under § 5 (a) to decrease any rate which is not the ' lowest reasonable rate.' It follows that the Congressional standard prescribed by this statute coincides with that of the Constitution, and that the courts are without authority under the statute to set aside as too low any ' reasonable rate ' adopted by the Commission which is consistent with constitutional requirements.'' The opinion then proceeds to a full review of the facts upon which the commission made its determination leading to the conclusion that such determination was consistent with constitutional requirements. In the oil and gas proration cases (*supra*) the proceedings were by injunction in the Federal courts.

In none of these decisions was the right to try the issue of confiscation disputed. Indeed that was the judicial process pursued in each one of these cases. The opinions are helpful in showing the deference with which a court should consider the findings and conclusions of an expert administrative commission. No doubt a court of equity in this State will be largely influenced by the practice which prevails in the Federal courts.

Counsel for the commission have suggested that the case is of such compelling importance that if judicial review of the question of confiscation is a constitutional requirement, we should broaden the scope of review in certiorari proceedings so as to permit review of that question on the facts as well as the law. This of course we may not do in view of the established limitations on such proceedings to which we have referred. If such changes are desirable, the Legislature, but not the courts, should make them.

Order affirmed, with costs, and each of the questions certified answered in the affirmative.

DESMOND, J. (dissenting). Plaintiff is a New York State corporation doing an intrastate business in the production and sale of electric power. After hearings and other appropriate proceedings before it, defendant Public Service Commission made and promulgated its order fixing permanent rates to be charged by plaintiff. Plaintiff thereupon brought the present suit in equity to enjoin the enforcement of the order. The complaint herein asserts that the rates so established by defendant commission are so low as to be confiscatory

of plaintiff's property and thus unlawful under the Fourteenth Amendment to the United States Constitution and section 6 of article I of the Constitution of this State. The commission moved to dismiss the action on the ground that plaintiff's only recourse to the courts is by way of a petition for an order of certiorari under article 78 of the Civil Practice Act, and that no suit in equity lies to contest commission-fixed rates. Plaintiff's retort is that, while certiorari is available, it is not a constitutionally adequate remedy. In certiorari proceedings, plaintiff points out, there would be no new trial and findings by the court on the disputed questions of fact as to value, etc., but only a review by the court of the commission's findings, to see if they were reasonable and supported by substantial evidence (*People ex rel. N. Y. & Queens Gas Co.* v. *McCall*, 219 N. Y. 84, 90, 91; *People ex rel. Consol. Water Co.* v. *Maltbie*, 275 N. Y. 357, 370: *Matter of Stork Restaurant, Inc.*, v. *Boland*, 282 N. Y. 256; *Matter of Miller* v. *Kling*, 291 N. Y. 65). Citing *Ohio Valley Water Co.* v. *Ben Avon Borough* (253 U. S. 287), for authority, plaintiff has successfully maintained herein that, having adequately alleged unconstitutional confiscation of its property, its absolute right to procedural due process can be satisfied by nothing less than a separate, independent trial *de novo* by a court, of the same questions already litigated at length before the commission. If that be the law, a good many long, involved rate cases will have to have two trials each, and the first trial — before the commission — will be rather a footless and futile performance. As the dissenting opinion in the Appellate Division remarked: " Something rather extraordinary is required to justify a procedure so protracted and cumbersome." (270 App. Div. 55, 65.) " State regulation of utility rates " would be, says Corwin's The Constitution and What It Means Today, " rendered largely farcical by the idea that the courts ought to retry from the ground up administrative findings of fact " (9th ed., p. 171).

Let us at once dispose of the idea that the present decision merely gives plaintiff its choice between two established modes of attacking, in the courts, commission-fixed rates. At a later point in this opinion we will deal more extensively with the historical background of rate review in New York, but we

point out now that the decision below in this case was the first in any appellate court in this State allowing a public utility corporation to try out anew, in a separate suit, the factual questions, as to value, return, etc., already submitted to, and determined by, the commission to which the Legislature has delegated sole authority in that field. Such cases as *Municipal Gas Co.* v. *Comm.* (225 N. Y. 89) have to do with rates directly fixed by the Legislature itself, to which certiorari review is inapplicable.

If it were not for the *Ben Avon* case (*supra*) and the structure of argument built thereon, we could dispose of plaintiff's suit summarily, for it is settled in the decisions of this court that no such bill in equity lies. Certiorari is the remedy provided for reviewing the Public Service Commission's rate orders (*People ex rel. Central Park North & East River R. R. Co.* v. *Willcox*, 194 N. Y. 383). In such a certiorari proceeding there is no second trial of the facts but an examination of the legality of the order — that is, an inquiry by the court as to whether the order is arbitrary or capricious or without support of substantial evidence (*People ex rel. New York & Queens Gas Co.* v. *McCall, supra*). In other words, it is the same sort of review afforded by our courts as to determinations by other administrative agencies (*Matter of Miller* v. *Kling, supra*). The contention that a rate is confiscatory is, like every other question of law, fully litigable in such proceedings (*People ex rel. New York & Queens Gas Co.* v. *McCall, supra*). Such was the New York law before the *Ben Avon* case, and this court saw nothing in the *Ben Avon* case to compel a change in the rule (*People ex rel. Consol. Water Co.* v. *Maltbie, supra*). In both the *New York & Queens* case and the *Consolidated Water* case (*supra*), there were claims of confiscation, but in each instance this court held that certiorari was a sufficient remedy. Both those cases went thereafter to the Supreme Court (245 U. S. 345 and 303 U. S. 158) but the point we are here passing on was not decided by that tribunal, in either case. Both were certiorari cases and in neither did this court say in so many words that an equity suit might not have been brought to establish that the rates were confiscatory. But that was the plain meaning of Judge LEHMAN's language in the *Consolidated Water* case, at page 370 of 275 New York: "It is true that a determination by

a legislative or administrative body on a question of fact is not binding upon a court where the power of the legislative or administrative body is challenged. (Cf. *Ohio Valley Water Co.* v. *Ben Avon Borough*, 253 U. S. 287; *Crowell* v. *Benson*, 285 U. S. 22; *St. Joseph Stock Yards Co.* v. *United States*, 298 U. S. 38.) Even so, where the State gives to an administrative body power to determine questions of fact by judicial inquiry subject to review in the courts, no Federal rights are denied by its order unless ' there was such a want of hearing or such arbitrary or capricious action on the part of the Commission as to violate the due process clause of the Constitution.' Except in the form of judicial *review* the courts do not examine the question whether the evidence *preponderates* for or against a conclusion. (*People ex rel. New York & Queens Gas Co.* v. *McCall, supra,* 245 U. S. at p. 348.)" That language means that the New York method of court scrutiny of rate orders is by certiorari proceedings and that the scope of our certiorari review adequately meets Federal constitutional requirements, including the requirements of the *Ben Avon* case. It is impossible to read it as meaning anything different.

Standing on those prior decisions of ours, we could stop at this point and vote for a dismissal of the present suit. But the prominence given the *Ben Avon* case (*supra*) in the briefs here, and a desire to pay due attention to the decisions of the Supreme Court, prompts some further discussion. The *Ben Avon* opinion does say that, in rate cases " if the owner claims confiscation of his property will result, the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment " (253 U. S. at p. 289). On its face, in its setting and against its particular factual background, that quoted language does seem to mandate a full new trial in the courts of facts disputed before the commission, and it has been frequently cited by judges and commentators as meaning just that. Whether or not it has been (implicitly but not explicitly) overruled by later cases in the same court (see *Railroad Commission* v. *Oil Co.,* 310 U. S. 573, 311 U. S. 570; *Power Comm.* v. *Pipeline Co.,* 315 U. S. 575, and *Power Comm.* v. *Hope Gas Co.,* 320 U. S.

591), we need not say. However, the so-called " Ben Avon rule " has been, to put it most mildly, weakened by those more recent decisions of the same court (see, as to the " vitality " of the Ben Avon doctrine, 42 Am. Jur., Public Administrative Law, § 222). For instance, in *Railroad Commission* v. *Oil Co.* (*supra*), the Texas Railroad Commission had, pursuant to a Texas statute, set the amount of crude oil permitted to be produced daily from an oil field and had prorated that production among the wells in that field. The oil company brought suit in the Federal courts, asserting that the proration resulted in an unconstitutional taking of its property rights in its own wells. The Federal District Court conducted a trial *de novo*, at the conclusion of which it held that the commission's order did result in such confiscation, and granted an injunction. The Circuit Court affirmed the decree. The United States Supreme Court reversed, disregarded the new findings and went back to the Railroad Commission's findings, with these comments: " Nothing in the Constitution warrants a rejection of these expert conclusions. Nor, on the basis of intrinsic skills and equipment, are the federal courts qualified to set their independent judgment on such matters against that of the chosen state authorities. For its own good reasons Texas vested authority over these difficult and delicate problems in its Railroad Commission. Presumably that body, as the permanent representative of the state's regulatory relation to the oil industry equipped to deal with its ever-changing aspects, possesses an insight and aptitude which can hardly be matched by judges who are called upon to intervene at fitful intervals. Indeed, we are asked to sustain the district court's decree as though it derived from an ordinary litigation that had its origin in that court, and as though Texas had not an expert Commission which already had canvassed and determined the very issues on which the court formed its own judgment. For it appears that the court below nullified the Commission's action without even having the record of the Commission before it. When we consider the limiting conditions of litigation — the adaptability of the judicial process only to issues definitely circumscribed and susceptible of being judged by the techniques and criteria within the special competence of lawyers —

it is clear that the Due Process Clause does not require the feel of the expert to be supplanted by an independent view of judges on the conflicting testimony and prophesies and impressions of expert witnesses." (311 U. S. 570, 575–576.) The statement just quoted is fundamentally at variance with the holding now being made by this court in the present case: that the Federal Constitution requires that whenever a utility corporation alleges that a rate is confiscatory, the corporation is entitled to bring an equity suit and demand new, independent findings by the court as to whether or not the rate is reasonable and fair. And how are we to reconcile with the majority opinion in the present case the Supreme Court holdings, in *Power Comm.* v. *Pipeline Co.* (*supra*) and *Power Comm.* v. *Hope Gas Co.* (*supra*) that a commission is not bound to the use of any single formula or combination of formulae in determining rates, that whenever a commission rate order is challenged in the courts the question is whether that order viewed in its entirety meets legal requirements, that the result reached, not the method employed, is controlling as to the legality of the rate, that it is not the theory but the impact of the rate order which counts, and, finally, that, if the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry is at an end?

This court, itself, after the *Ben Avon* decision, again tested our certiorari procedures by that case's rules and found that they stood the test (*Consolidated Water* case, *supra*). This court thought then that due process does not require that any fact be tried out twice in separate tribunals before a binding result be reached. The property owner who charges confiscation is given a court determination of that issue, but the issue is decided by the court on the reasonable factual holdings made by another competent tribunal, as to values and other items basic to rate making. That special tribunal created and equipped by the Legislature for the special task has already investigated the facts and arrived at an appropriate rate. All of that is then examined by a court to see if the owner's rights are being violated. A brief look at the development of the law of rate making will show, we think, why the courts of New York hold that this **system lacks no element of due process.**

No State, under the guise of regulating fares and tariffs, may require a utility company to perform its services without appropriate reward (*Railroad Commission Cases,* 116 U. S. 307, 331). Accordingly, the rates charged by the owners of private property devoted to public utility uses may be regulated by the States in the exercise of their police power, but a State cannot take away an owner's right to reasonable compensation for such use (*Munn* v. *Illinois,* 94 U. S. 113). It follows that any prescription, by a State, of rates too low for just compensation to the public utility corporation is confiscatory and offends against the Fourteenth Amendment's requirement of due process (*Smyth* v. *Ames,* 169 U. S. 466, 526). Likewise violative of the due process mandate would be a State statute which would attempt to give finality and conclusiveness to rates fixed by a State public service commission without provision for any judicial inquiry as to their reasonableness (*Chicago, Milwaukee & St. Paul Ry. Co.* v. *Minnesota,* 134 U. S. 418, 458). An avenue of judicial approach there must be. Rate making by a State government is, of course, legislative, not judicial, in general character (*Prentis* v. *Atlantic Coast Line,* 211 U. S. 210, 226; *Matter of Helfrick* v. *Dahlstrom Metallic Door Co.,* 256 N. Y. 199, 207), since it is an exercise of the police power (*Buffalo East Side R. R. Co.* v. *Buffalo Street R. R. Co.,* 111 N. Y. 132) and its regulations are to be applied in the future (*Norwegian Nitrogen* v. *United States,* 288 U. S. 294, 318, 319). But while the setting of rates is legislative, the determination of whether or not a particular rate works out to an illegal forfeiture of private property, is a judicial inquiry (see *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92, 95, 96). From all of that there follows the rule of constitutional interpretation that adequate judicial procedures for such inquiries must be made available by the rate-fixing State (*Chicago, Milwaukee & St. Paul Ry. Co.* v. *Minnesota, supra; Smyth* v. *Ames, supra*). This procedural due process, however, does not call for any particular mode of court activity. The right to due process does not give a citizen a vested right to any one form of procedure. It is enough that he be afforded access to the courts for protection of his property (*Truax* v. *Corrigan,* 257 U. S. 312, 332; *Hurtado* v. *California,* 110 U. S. 516, 536). Due process, as applied to a judicial inquiry, means a course of legal proceedings accord-

ing to established rules and procedures for protecting and enforcing private rights (*Pennoyer* v. *Neff*, 95 U. S. 714, 733; *Scott* v. *McNeal*, 154 U. S. 34, 46). It means the following of forms of law appropriate to the case and just to the parties (*Hagar* v. *Reclamation District No. 108*, 111 U. S. 701, 708). "The due process clause of the Fourteenth Amendment requires that action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice which lie at the base of our civil and political institutions, which not infrequently are designated as 'the law of the land.'" (*Buchalter* v. *New York*, 319 U. S. 427, 429.) In the end, it connotes procedure "having the sanction of settled usage" (*People* v. *Adirondack Railway Co.*, 160 N. Y. 225, 236, affd. 176 U. S. 335). As Lord COKE put it, it means being brought in to answer "according to the 'old law of the land'" (*Westervelt* v. *Gregg*, 12 N. Y. 202, 212). The courts must furnish protection "against all mere acts of power, whether flowing from the legislative or executive branches of the government" (*Westervelt* v. *Gregg, supra*, p. 212), by offering the citizen a "forensic" judgment on his complaint, not "mere legislation" (*Taylor* v. *Porter*, 4 Hill 140, 146, 147).

By affirming the orders below in the present suit, we are holding that our customary certiorari proceedings under article 78 of the Civil Practice Act somehow fail to meet the tests outlined above. Wherein are they deficient? The ultimate determination of the validity of commission-established utility rates is now, as it always has been, in the courts. In this State certiorari as a traditional and accepted method of reviewing the action of inferior bodies or officers is older than the Fourteenth Amendment, and older than the State itself (*People ex rel. Republican & Journal Co.* v. *Lazansky*, 208 N. Y. 435, 441). In our State the whole judicial power is not committed to the courts in the first instance (*People ex rel. Steward* v. *Railroad Comrs.*, 160 N. Y. 202, 207) but the courts have always been empowered to re-examine the judicial or quasi-judicial action of other bodies by way of certiorari (*Mooers* v. *Smedley*, 6 Johns. Ch. 28; *People ex rel. Hanford* v. *Thayer*, 88 Hun 136; *Hyatt* v. *Bates*, 40 N. Y. 164, 166). For over a century the New York courts have found it sufficient to review such actions as to their

legality, including a search of the record in each case to see if there be any evidence supporting the determination below, but without a retrial of fairly disputed questions of fact (*People ex rel. Bodine* v. *Goodwin*, 5 N. Y. 568; *People ex rel. Cook* v. *Board of Police*, 39 N. Y. 506; *People ex rel. Burby* v. *Common Council*, 85 Hun 601; *People ex rel. Haines* v. *Smith*, 45 N. Y. 772, and see section 2140 of the old Code of Civil Procedure, enacted in 1880, and former section 1304 of the Civil Practice Act, the latter now superseded by present section 1296 of the Civil Practice Act). As Judge CUDDEBACK pointed out in *People ex rel. New York & Queens Gas Co.* v. *McCall* (*supra*), that limited judicial review avoids substituting the judgment of judges for that of other officers in matters of fact, but does include an inquiry into questions of jurisdiction, authority and similar questions of law. In other words, the courts do not interfere with the commission's business any further than is necessary to keep the commission within the law and protect the property rights of the utility corporations. This court's opinion in the *New York & Queens* case (*supra*) points out (219 N. Y. at pp. 88, 90) that our certiorari method of scrutinizing commission-made rates is in seeming accord with *Interstate Commerce Comm.* v. *Illinois Central R. R. Co.* (215 U. S. 452) and *State* v. *Great Northern Ry. Co.* (130 Minn. 57). In the *Great Northern* case, the Minnesota court remarked that any general *de novo* trial by a court of a rate question would amount to an unconstitutional assumption by that court of an essentially legislative function.

To bring our list of New York decisions down to date, we point to *Matter of Rumsey* (296 N. Y. 113), decided in January of this year. The Rumsey Corporation was ordered by the State Labor Department authorities to pay penalties totaling $1,000 for delays in filing its payroll statements. The corporation insisted that all the evidence taken at the departmental hearings proved that it had been absolutely impossible to get the reports in on time. Section 623 of the State Labor Law provides that "A decision of the appeal board shall be final on all questions of fact * * *." It was argued to us that the statute, insofar as it forbade the courts to weigh the fact issues as to confiscation of property by means of an unwarranted fine, was unconstitutional (see Point III, respondent's

brief in this court, in the *Rumsey* case). We found " no substance " in that contention (296 N. Y. at p. 118).

In *Coler* v. *Corn Exchange Bank* (250 N. Y. 136) Chief Judge CARDOZO, stating this court's approval on a long-established method of seizing property, wrote: " Not lightly vacated is the verdict of quiescent years " (p. 141). He there cited *Ownbey* v. *Morgan* (256 U. S. 94, 108, 111) which tells us that one good way of testing court procedures for due process is to see whether they are familiar and time-honored. The Fourteenth Amendment itself expresses an insistence that the States perpetuate old and settled ideas of justice. In the *Coler* case, Chief Judge CARDOZO quoted also from *Jackman* v. *Rosenbaum Co.* (260 U. S. 22, 31): " The Fourteenth Amendment, itself a historical product, did not destroy history for the States and substitute mechanical compartments of law all exactly alike. If a thing has been practised for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it \* \* \*." The practice in this State for well over a hundred years has been for the courts to perform their proper judicial functions in relation to quasi-judicial bodies by testing the actions of those bodies for reasonableness and legality, without ousting them from their own special fields of investigation. Due process demands no more.

As we understand the majority's position, it is that due process requires a plenary equity suit to try plaintiff's allegation of confiscation, but that no new testimony need be taken, and that the equity court may try the issue on the proof already taken by the commission. It must be clear: first, that plaintiff seeks no such proceeding and does not want new findings on the evidence already heard but demands a real *de novo* trial, and, second, that, while a new determination on the commission record may satisfy concepts of due process, it finds no authorization or precedent in any procedural statute, rule or decision in this State. After this plenary equity suit has gone to trial and Special Term has weighed for itself the commission testimony, the party aggrieved by the Special Term decision will, we assume, have a right of appeal to the Appellate Division. On such an appeal the weight of the evidence will again be open. That will make three separate, independent weighings,

by one commission and two courts, of the identical testimony, each tribunal having exactly the same function and power, but each overruling the one ahead of it. And, if the Appellate Division makes new findings, this court will for a fourth time pass on the weight of evidence. All this is in supposed obedience to instructions from the Supreme Court, which court not only has indicated in at least three recent decisions that no such new trials are necessary but has said in the *Schechter* case (295 U. S. 495, 530) and elsewhere, that nothing in the United States Constitution prevents Congress from delegating the determination of fact questions to any tribunals it sets up.

The Public Service Commission was set up in this State forty years ago. The commission has been investigating and fixing utility rates ever since. The scope of its work and the number and kind of services regulated by it have been gradually increased by the Legislature. The commission now has several hundred officers and employees and an annual budget of about two million dollars. It regulates about thirty-five hundred separate corporations and has conducted thousands of investigations and hearings, a large percentage of them having a direct or indirect effect on rates. Rate reductions running into vast sums have been ordered and put into effect. Now a way has been found to take away pretty much all finality from the commission's rate-making function. We make no prediction as to the size and force of the impact of this present decision on the whole carefully built and strengthened system of protecting the interests of the people of this State. The decision, it cannot be denied, upsets a workable and working system. It authorizes an additional cumbersome and elaborate method of court review when there is neither practical nor theoretical need therefor. And, based as it is on a construction of the Federal Constitution, our ruling will be beyond the power of the State Legislature to correct.

In Administrative Justice and The Supremacy of Law by Dickinson, published in 1927, this was said as to authorizing the courts to make new findings in these cases: " It is like permitting the court to substitute its conclusion in place of the jury's as to whether the plaintiff in a negligence action did or did not see an approaching vehicle. If the court's ' inde-

pendent ' judgment on such a point is to prevail, there would be little use in having a jury. The argument applies with greater force to the finding of a commission, reached in a separate proceeding at much trouble and expense to both the public and the parties. The double process only reduplicates the uncertainty of any particular case and brings it out at the end of the administrative stage of the proceedings with nothing settled which is not liable to be overruled. After the administrative tribunal has spoken, the whole case would still be as open, and the nature of the ultimate decision as uncertain, as if no proceedings had yet been had. Such a hazard is not one which either the community or the utility companies ought fairly to be called upon to bear." (P. 202.)

The order appealed from should be reversed and the complaint dismissed, with costs in all courts. Both certified questions should be answered in the negative.

LEWIS, CONWAY and DYE, JJ., concur with THACHER, J.; DESMOND, J., dissents in opinion in which LOUGHRAN, Ch. J., and FULD, J., concur.

Order affirmed, etc.