Samuel A. Spiegel, J.
Defendants move for dismissal of the complaint, or, in the alternative, for a stay of proceedings upon the ground that the court does not have jurisdiction of the subject matter.
Defendants contend that this matter is in the exclusive primary jurisdiction of the Public Service Commission (hereinafter referred to as Commission or PSC), that the plaintiff has failed to exhaust its remedy before the Commission, and, alternatively, that the regulation of milk-handling is reserved exclu *91 sively to the Secretary of Agriculture, in pursuance of the Agricultural Adjustment Act (U. S. Code, tit. 7, § 601 et seq.), pre-empting the entire field of regulation.
It is alleged in the complaint that this action is instituted by the Attorney-General, pursuant to the Donnelly Antitrust Act (General Business Law, § 340), upon an agreement in restraint of competition and free exercise of activity in the conduct of business in the transportation of milk and milk products.
Defendant Tank Carriers Conference, Inc. (hereinafter called “Conference”) is a membership corporation whose purpose, among other things, is to “ provide a medium thereof which its members may engage in publication and filing of rates and tariffs with State and Federal regulatory agencies.” The Conference certificate of incorporation further provides that nothing therein contained “ shall authorize or empower the corporation to perform or engage in any acts or practices prohibited by Article 22 of the General Business Law or other antimonopoly statutes of this State.”
The Attorney-General charges that for many years the defendants and others arranged and combined to restrain competition and free exercise of activity in the business of the transportation of milk and milk products in violation of section 340’ of the General Business Law.
In furtherance of such arrangement and combination, it is charged that the defendants and others did solicit, induce and persuade, urge and coerce other carriers to participate in the Conference’s price-fixing procedures and to adopt the prices as thus fixed, and to increase their transportation prices. The Conference filed protests and complaints before a regulatory agency against noncomplying carriers which were charging lower prices. It is further charged that it negotiated with carriers against whom such protests and complaints had been filed, to join the Conference, and to increase their prices. Thereafter, said Conference withdrew protests and complaints upon increase of their rates by such carriers. It was also represented in the “purpose ” clause of the Conference’s certificate of incorporation that it was formed to publish and file tariffs of member carriers, but, it is alleged, the Conference’s contemplated purpose to establish procedures for the joint consideration and determination of rates was omitted and concealed.
It is alleged that the effect of such arrangement and combination and of the actions taken in pursuance thereof is to raise the transportation and hauling price, to maintain and stabilize noncompetitive transportation rates and tariffs, to prevent and interfere with the freedom of carriers to establish their own *92 transportation prices, to reduce, suppress, and eliminate competition in the transportation of milk and milk products, thus depriving consumers and bottlers and processors of fluid milk and the users of other dairy products in bulk of the benefits of competition.
Defendants McBride Transportation, Inc. and C <& E Trucking Corporation are common carriers authorized by the Public Service Commission to transport milk and milk products between points within the State of New York. They are members of the defendant Conference, a membership corporation whose members are authorized carriers. Said Conference filed an application with the Commission on November 28, 1966, for approval of an agreement which, defendants assert, purports to permit members of the Conference to jointly consider, negotiate, and establish transportation rates within the State of New York. The application for approval of the agreement states:
‘ ‘ In order to provide reliable and regular service required it is necessary for these carriers to have a forum available for the discussion of rate matters in order that said carriers may be enabled to maintain their ability to provide the necessary standards of service to the public. Further the applicant Conference makes possible compliance with the Commission’s rules and regulations at a minimum cost and expense to the member carriers. For the reasons afore-mentioned applicant respectfully states that approval of this application will be in harmony with the transportation policy of this state and in furtherance of the public interest. * * *
‘ ‘ Filed herewith as Exhibit lisa copy of the Conference’s By-Laws which together with Exhibit 2, its membership application, constitutes the agreement between and among the members of the Conference for which approval is sought.” Listed as constituting the members of the Conference are the two codefendants.
Subdivision 7 of section 63-cc of the Public Service Law provides: “ Parties to any agreement approved by the commission under this section and other persons are, if the approval of such agreement is not prohibited by paragraph three or four, hereby relieved from the operation of the general business law section three hundred forty, with respect to the making of such agreement, and with respect to the carrying out of such agreement ”. If the application is approved, the Conference and its members will be free to engage in joint consideration and the establishment of rates.
Defendants urge that plaintiff is endeavoring here to prevent by judical adjudication that which the Commission is designed *93 to permit on approval of the application before it and that until the Commission has acted, this suit is premature. Of course, this is true if the grievances tendered by the complaint pertain solely to activities to be lawfully engendered by approval of the pending application before the Commission in implementation of the proposed agreement.
Before considering the merit of the contentions of the parties as to the power of the court to entertain the action or, in the alternative, the propriety of a stay pending a resolution of the matter before the Commission, it is in order to note that while there is a lifting of the application of the Donnelly Act to activities in the effectuation of the agreement, if it is approved, said immunity does not attach until there is such approval. This may well be the key to the basic question whether the matters now before this court are the same matters before the Commission on the Conference application and plaintiff’s protest thereto. Nor can it be contested that relief from the operation of the Donnelly Act cannot go to acts beyond orderly and lawful activity in carrying out the proposed agreement upon approval thereof for joint consensual action.
In short, the question is whether there remains overriding State interest in the prevention of unlawful activity.
Milk is the most precious food for babies. Along with bread, it is the staff of life for practically everyone. The best interests of the public are served by free competition and by preventing the price of milk and milk products from being fixed directly or indirectly by a conspiracy or by coercion. To that end this action to prevent unlawful activity was appropriately instituted.
This is akin to that area of State power in labor relations to enjoin and to enforce claims and rights in respect of alleged tortious conduct, which at the same time may include actions protected by Federal act, and constituting unfair labor practice, even while a charge of unfair labor practice may be pending before the National Labor Relations Board.
Thus, as defendants argue, the Commission does indeed have primary jurisdiction over the matters which are the subject of the application before it. Does that primary jurisdiction, however, before or after approval of application, furnish an umbrella under which defendants may with impunity engage in the additional activities of which the plaintiff complains 1 We do not believe so. Is this court action premature 1 Again, we do not believe so. Does the primary jurisdiction of the PSC mean sole jurisdiction to the exclusion of the court. The answer is no.
*94 Judicial review upon an ex parte administrative record before the PSC of an approval or disapproval of the defendant Conference’s application or by-laws, on the limited issue of furtherance of the State’s transportation policy, would be insufficient to a disposition of the issues presented in the case at bar. (Matter of Reynolds v. Triborough Bridge & Tunnel Auth., 276 App. Div. 388.) This court, therefore, would be limited upon judicial review, to examine only that question which the applicable statute (Public Service Law, § 63-cc) has specified for determination, i.e., approval of an agreement only if in furtherance of State transportation policy. (Staten Is. Edison Corp. v. Maltbie, 296 N. Y. 374.)
Judicial review of the PSC’s determination of the defendant Conference’s ex parte application is not a substitute for judicial enforcement under the Donnelly Act of the anti-competitive practices alleged in the case at bar.
If defendants’ view is adopted this court, under CPLR 7803 (subd. 3), would then be limited in determining only whether the administrative determination was ‘ ‘ arbitrary and capricious or an abuse of discretion.” This court could never pass upon the defendants’ predatory acts and practices set forth in the complaint, which are harmful to the people of the State of New York. (Matter of Wager v. State Liq. Auth., 151 N. Y. S. 2d 274, affd. 3 A D 2d 934; Matter of Mouakad v. Ross, 274 App. Div. 74.) Judicial review would be after approval of the application by the Commission. Such approval neither determines the validity or culpability of acts previously engaged in nor predetermines the validity and culpability of actions taken in the future in claimed implementation of the approved agreement.
Thus, defendants argue that the Commission has sole jurisdiction over rate-making and that price-fixing is permitted if an agreement therefor is approved. To that extent, certainly, price-fixing is indeed involved, both here, of which plaintiff complains, and before the Commission, for which defendants seek approval. Stated in that manner, the issue appears to be confined, circumscribed and limited to the same in each instance. On examination, however, it is not so. Commission approval does not sanction or approve the machinery used to carry out the purposes of the agreement. Such Commission approval is not to be construed as a license to use force or other unlawful means to achieve price stability, and standards of service to the public not in harmony with the State transportation policy and not consonant with the furtherance of the best interests of the public.
*95 The purpose of the State transportation policy and of Commission approval is certainly not for the elimination of competition by unlawful means.
The State cannot be estopped on any equitable grounds from exercising its sovereign power with respect to claimed unlawful conspiracy and continuing activities. (State of New York v. New York Movers Tariff Bur., 48 Misc 2d 225.) This is so particularly where the acts of which complaint is made appear to involve activities not to be sanctioned by the proposed agreement and its approval.
In Movers Tariff Bur. (supra, pp. 233-234) the essence of the complaint as it was summarized by the court there was: ‘ ‘ and the essence of the complaint is the existence of agreements between and among carriers, such alleged agreements being of the nature set forth in subdivision 1 of section 63-cc of the Public Service Law. It would appear, therefore, that the Legislature has given the Public Service Commission express jurisdiction to consider the alleged activities and transactions set forth in the complaint.” Despite recognition of the mandate of the Legislature, the court there permitted the plaintiff to maintain the action.
Here, the essence of the complaint, as it relates to alleged conspiracy, is not directed alone to a conspiracy by joint consideration of rate-making, but also to activities to coerce others, including nonmembers, to comply with Conference agreements and thereby to eliminate competition by unlawful and unsanctioned means.
In this litigation, the Attorney-General, while protesting in the administrative proceeding, is not seeking similar relief here collaterally.
The Attorney-General’s protest to the Public Service Commission, as distinguished from this broader litigation, on the narrowly defined issues presented before said Public Service Commission, pursuant to the defendants’ prior application, for a section 63-cc exemption, cannot be characterized as an administrative remedy which should be “ exhausted ” and “ cognizable in the first instance by an administrative agency ”. (See United States v. Western Pacific R. R. Co., 352 U. S. 59, 63, 64.)
Before us is not a question solely of the merit of the Conference’s application for approval of agreement. It is not the fact, as defendants urge, that the Attorney-General fails to advise the court of the Commission’s competence and primacy in that matter, or that section 63-cc authorizes a party to the agreement to take independent action. The fact is that *96 the matter of the independence of carriers, to which it is said the Attorney-General does not allude, is not considered until it is alleged that the acts of the carriers are not independent. It is precisely the absence of any such independence, and the presence of coercive action, of which the plaintiff complains. The question is whether actions of the members and nonmembers are truly independent or actually coerced. In the latter event, an overriding State interest prevails.
The answer may well be inherent in defendants’ statement that they “ cannot coerce or compel carriers to adopt a particular rate.” If thereby they mean that the law does not sanction it, the court agrees. If they mean that in fact it cannot be done, then that remains to be ascertained.. However, for the purposes of this motion the allegations of the complaint must be deemed to be true.
In Movers Tariff Bur. {supra, p. 246) the court not only sustained the complaint while an application was pending before the Commission, but stated, in addition: ‘ ‘ Further, even
though commission approval would serve to render certain of the conduct herein charged immune from challenge such activities might nevertheless be challenged as components of a conspiracy to achieve an unlawful end, and the instant action is based on alleged conspiracy. As I see it, the practices immunized, if such practices are part of a conspiracy to achieve an unlawful end, would, by the loss of that immunity be rendered unlawful ’ ’.
In considering the complaint, the court must look to the entirety of the alleged unlawful scheme to discover whether there are elements going beyond the permissible limits of the proposed agreement, as the allegations show they do. Nor are the activities in excess of those permissible within the power of the Commission to deal with and to redress. Thus, Donnelly Act violation may not be used as immunity or shield to achieve the regulation of commerce, envisioned by agreement under the Public Service Law, and thus unlawfully to restrain commerce and competition and to dilute the standards adopted in the public interest. (Continental Co. v. Union Carbide, 370 U. S. 690; Georgia v. Pennsylvania R. R. Co., 324 U. S. 439.) The Commission cannot give relief under the Donnelly Act (Slick Airways v. American Airlmes, 107 F. Supp. 199, app. dsmd. 204 F. 2d 230, cert. den. 346 U. S. 806). There the District Court stated (p. 207):
‘ ‘ Further I cannot accept the thesis that since the CAB has the power to approve agreements or combinations which *97 might otherwise violate the anti-trust laws, it would he necessary first to prove before the CAB a conspiracy to restrain trade and then have the Board disapprove the conspiracy before a litigant could seek redress for damages in the courts. Such a conspiracy being inherently secretive and furtive in nature is not the type of subject matter which would be dealt with by an order made under §§ 488, 489 or 492 so as to be relieved from the operation of the anti-trust laws. * * *
“ The Cunard case does not stand for the proposition that an administrative body has remedial jurisdiction to determine the existence of the conspiracy under the anti-trust laws. It stands for the proposition that to the extent a complaint alleging a conspiracy under the anti-trust laws also sets forth a violation of another regulatory act under which an enforcing administrative body is established and where a complete remedy has been provided in said act, then the administrative body established thereunder has exclusive primary jurisdiction over such a matter, even though the facts alleged may state a conspiracy under the anti-trust laws, and to that degree the anti-trust laws are thus superseded.” (p. 211).
In the circumstances here and the allegation of the existence of a conspiracy, dealing with antitrust violation, stay of action and answer is not warranted. The issue of antitrust violation must be determined here (Lesron Jr., Inc. v. Feinberg, 13 A D 2d 90; Slick Airways v. American Airlines, supra). The conduct, of which plaintiff complains, goes beyond the conduct of which defendants seek Commission approval in consonance with the proposed agreement.
The fact that the Attorney-General has filed a protest in a separate and independent proceeding before the Public Service Commission to oppose an application by the Conference for an exemption from the State antitrust laws cannot be deemed to confer exclusive jurisdiction on that administrative body.
This court will not abdicate its responsibility nor surrender its jurisdiction to an administrative agency where the regulatory statute does not provide for adequate or similar relief under the Sherman Act. (Slick Airways v. American Airlines, supra.)
Under the circumstances herein the court has the inherent and mandated authority and obligation, to grant the relief requested, particularly since the best interests of the public are involved in this issue which affects the entire State.
The Legislature did not grant the Public Service Commission the machinery to enforce antitrust laws or tó remedy the *98 evils created "by the defendants’ systematic pattern of antitrust violations set forth in the complaint. Accordingly, the defendants may not now attribute or otherwise impute this added jurisdiction to the Public Service Commission.
The motion is in all respects denied.