In the Matter of MAYBEL NEWBRAND, Appellant, against
CITY OF YONKERS et al., Respondents.

Argued January 7, 1941; decided March 6, 1941.

*Ulysses S. Adler* and *David Gorfinkel* for appellant.

*Leonard G. McAneny, Corporation Counsel (Harold T. Garrity* of counsel), for respondents.

LEHMAN, Ch. J. Edward Newbrand died on the 25th day of March, 1938. He was a member of the police force of the city of Yonkers and at the time of his death his annual salary was $3,000. Local Law No. 1 of the City of Yonkers for the year 1931 provides that the " board of trustees shall grant pensions out of said pension fund, in the following cases * * * 2. To the widow of any men of the police force who shall have been killed while in actual performance of police duty, or who shall have di from the effect of any injuries received in the actual dischar

of such duty one-half of the annual salary of such member at time of death, payable to said widow during her lifetime, unless she remarries when said pension is to terminate. To the widow of any such member, who has died, or shall hereafter die after three months of service on said police force, a sum not exceeding six hundred dollars per year, during widowhood " (§ 4). The Board of Trustees of the Police Pension Fund granted to the widow of the deceased officer a pension of $600 per annum, but rejected the widow's claim that the death of her husband was due to injuries sustained by him in the actual discharge of his duties in 1926, twelve years before his death.

The widow then applied to the Supreme Court for relief pursuant to the provisions of article 78 of the Civil Practice Act. Her original petition is not in this record. One of the members of the Board of Trustees filed an answer or return to the widow's petition and annexed thereto the minutes of a meeting of the Board of Trustees of the Police Pension Fund held on May 16, 1938, which set forth that " attached to Mrs. Newbrand's claim was an affidavit or letter from Dr. Leon A. Giammette, supporting her contention. After due consideration and an opinion from the Corporation Counsel's office, the Trustees unanimously decided to disallow Mrs. Newbrand's claim for additional compensation." The " opinion " of the Corporation Counsel, referred to in the minutes, is annexed to the answer or return. It is in the form of a letter stating: " I wish to advise that I have very carefully examined the file on this matter, and find that no legal evidence that would entitle Mrs. Newbrand to a pension amounting to one-half of the salary of above deceased officer * * * exists." From the answer or return it appears, also, that in addition to this opinion of the Corporation Counsel, the Board of Trustees had before it a letter from Dr. Philip S. McCormick, the police surgeon of the Police Department of the City of Yonkers, which states amongst other things that " the only opinion I can express * * * as to the causation of the patrolman's recent illness, is, that it is too ridiculously

absurd that it is unworthy of any further comment." It does not appear that the Board of Trustees in rejecting the claim of the widow had any information or evidence to sustain their determination except these letters.

In November, 1938, an order was entered " that the issues in the above-entitled action be and the same hereby are referred to Hon. J. Addison Young, Official Referee, in and for the Ninth Judicial District, to hear, try and determine the issues in this action with the same force and effect as if the same were tried at a regular term of this court." The order of reference recites that the attorneys for both parties consented and stipulated in open court that the issues should be so referred. In June, 1939, seven months after the order of reference was made and entered, the widow requested the Board of Trustees of the Police Pension Fund to reconsider her claim and to grant a rehearing upon it. The trustees complied with that request and on October 13, 1939, after such rehearing had been held, again denied the application for an additional pension. Then the appellant filed an " amended " petition which recites that the rehearing was held and that " the action of the respondents in denying your petitioner's application for a pension based on one-half of the annual salary of said Edward Newbrand, deceased, was capricious, biased and prejudiced and contrary to law and against the weight of the evidence and the rights of your petitioner were damaged and injured therefor." On November 27, 1939, a hearing was held before the Official Referee who had been appointed a year earlier.

The only " issues " which could have been referred to the Official Referee in November, 1938, were the " issues " raised by the original petition and the original answer or return to that petition. These " issues " concerned the determination of the Board of Trustees which was made before the original petition was filed and which the widow at that time challenged. At the time of the hearing before the referee, that determination and the proceedings held prior thereto had been superseded by the rehearing and

determination thereafter made. The parties apparently assumed that the original petition has been superseded by the amended petition and that the referee should determine the " issues " which might arise concerning the allegations of the " amended " petition, and should review the determination made upon the rehearing. Any irregularity or defect in the manner in which those issues were brought before the referee for determination has, it is plain, been waived by the parties. They submitted to the referee the controversy arising from the rejection by the Board of Trustees of the petitioner's claim at the rehearing though that rehearing was held and the controversy arose after the order of reference was entered. No answer to the amended petition had been filed by the trustees, but at the hearing before the referee the trustees were permitted to deny the allegations in that " amended " petition concerning the cause of the death of the police officer and especially to deny the allegation that the action of the trustees was " capricious, biased and prejudiced and contrary to law and against the weight of the evidence." Then the petitioner presented her evidence intended to establish the allegations of her claim that the police officer's death in 1938 was due to injuries received in an accident in 1926, and the trustees, after objection to the evidence introduced for that purpose by the petitioner, presented medical evidence intended to show the contrary.

After hearing that evidence the referee filed a decision in which he reviewed the evidence and stated: " I have read very carefully all the evidence given in this proceeding, and have reached the conclusion that, while the case is unusual, I believe the petitioner has fairly established her claim and that she is entitled to the relief sought in her petition." An order was entered upon that decision on the 4th day of January, 1940, adjudging " that the action of the respondents in denying the application of Maybel Newbrand, petitioner, and widow of said Edward Newbrand, for a pension of $1,500 * * * was capricious, biased, prejudiced and contrary to law and against the weight of

the evidence and the said action and determination of the respondents be and the same is hereby annulled, vacated and set aside." The order further provided that the " respondents, Joseph F. Loehr, Dennis M. Morrissey and James E. Hushion, as Trustees of the Police Pension Fund of the City of Yonkers, New York, or their successors in office, be and they are hereby directed to place the name of Maybel Newbrand on the pension rolls of the City of Yonkers, as a widow of a deceased member of the Bureau of Police, as of March 25, 1938, at an annual pension of $1,500, which equals one-half of the annual salary of the said Edward Newbrand at the time of his death."

On January 4, 1940, when the order was entered, the terms of office of the trustees named in the order had expired, but the successor to one of the trustees so named was not appointed till January 18th. Though none of the three trustees was in office on January 20, 1940, the Corporation Counsel on that day served and filed a notice of appeal to the Appellate Division in their behalf or, at least, in their names. On February 6th the widow who had been successful before the Official Referee moved in the Appellate Division to dismiss the appeal on the ground that the appellants named in the notice of appeal were not parties aggrieved. The Corporation Counsel made a cross-motion to amend the notice of appeal *nunc pro tunc* so that the new trustees should be named as parties appellant therein. The Appellate Division, on the 19th of February, 1940, denied the motion to dismiss the appeal and granted the cross-motion " to substitute parties appellant " named in the notice of appeal. Thereafter, upon the appeal from the final order or judgment entered upon the decision of the referee, the Appellate Division reversed that order *on the law* and dismissed the proceedings on the merits, stating in its opinion that: " On all the proof there was at least a fair question of fact to be determined by appellants and it cannot be said that the determination made was not within the reasonable exercise of their discretionary power." (259 App. Div. 1089, 1090.)

Upon the appeal to this court from that determination of the Appellate Division, the appellant seeks to bring up for review, in accordance with the provisions of section 580 of the Civil Practice Act, the intermediate order of the Appellate Division denying her motion to dismiss the appeal and granting the countermotion for a substitution of parties appellant. The members of the Board of Trustees named in the petition were not parties aggrieved after the date when they ceased to hold office and could not appeal from a final order entered upon the decision against them of the referee. A proceeding to review a determination made by the members of an administrative board is brought against them in their official character. After they cease to hold office only their successors may invoke action by the court. (*People ex rel. Walker* v. *Ahearn*, 200 N. Y. 146, 148; *Matter of Rox* v. *Doherty*, 284 N. Y. 550.) A notice of appeal by former members of the Board of Trustees would be ineffective, but at the time when the Appellate Division granted the motion for the substitution of the parties appellant, the limitation of time during which an appeal might be taken had not run against the successors to the trustees who had originally taken the appeal. After the successors to the original appellants, by motion for substitution, " invoked the action of the court," the court might properly permit the substitution and deny the motion to dismiss. (*People ex rel. Walker* v. *McAneny*, 202 N. Y. 551.) In that case the court indeed went further. After it had entered an order dismissing the appeal in *People ex rel. Walker* v. *Ahearn* (*supra*) orders were entered in the courts below substituting Ahearn's successor as party defendant in the proceedings in those courts though those proceedings had long terminated and this court then refused to dismiss an appeal taken by the successor to Ahearn from the determination of the Appellate Division in which the successor had been *retroactively* substituted.

The determination of the Appellate Division dismissing the proceedings on the merits is, as we have already pointed out, based upon the ground that there was " a fair question

of fact to be determined by *appellants*," *i. e.*, by the Board of Trustees of the Pension Fund. The question of fact to be determined by the "*appellants*" was whether or not the police officer died from the effects of injuries received twelve years before his death in the discharge of his duty. After the trustees had notified the widow that they had determined that question against her, the referee, as we have said, took new evidence upon that question and upon conflicting evidence reached the opposite conclusion. If the referee was authorized, either by the statute or by the parties, to determine that question of fact upon conflicting evidence, then the decisive question before the Appellate Division was not whether on all the proof there was at least a fair question of fact to be determined *by the Board of Trustees* of the Pension Fund, but whether on all the proof there was at least a fair question to be determined by the *Official Referee*.

At the same time that the Legislature by article 78 of the Civil Practice Act abolished " the classifications, and writs and orders of certiorari to review, mandamus and prohibition " it provided that " the relief heretofore obtained by such writs or orders shall hereafter be obtained as provided in this article." (§ 1283.) No right to relief theretofore available by certiorari, by mandamus, or by prohibition, for the review of a determination made by a public body or officer or for the annulment of an official act not performed in accordance with law or to " compel performance of a duty specifically enjoined by law " was destroyed. (§§ 1283 and 1284.) The primary purpose of the new article was to wipe out technical distinctions which had been a snare for suitors approaching the court for relief and which, at times, hampered the court in granting relief for proven grievances. Under its provisions, when a suitor shows a right to some relief the court grants the relief to which he is entitled, unrestricted by the form of the proceedings brought by the aggrieved person.

The nature of the alleged grievance determines, none the less, the form of the hearing before the court to which the

aggrieved party is entitled, the questions to be determined at such hearing, and the relief which the court has power to grant. The suitor's alleged grievance may be that a determination of a body or officer " made as the result of a hearing held, and at which evidence was taken, pursuant to statutory direction " is erroneous. The suitor is entitled, under the new article as under the superseded articles, to invoke the power of the Supreme Court to review the challenged determination, and upon such review the court will determine the same questions and will grant substantially the same relief as if the proceedings had been initiated by a writ or order of certiorari now abolished. (Cf. Civ. Prac. Act, new art. 78, § 1296, subds. 3, 4, 5, 6 and 7; old art. 78, § 1304.) Where the grievance alleged is not that a determination, made as the result of a hearing, is not sustained by sufficient competent proof, or is otherwise erroneous, but the grievance is rather that the determination is the result of prejudice; or where the grievance is that a public body or officer has in other respect acted arbitrarily or without authority or has failed to perform a duty enjoined upon him by law, the answer or return to the petition may raise issues of fact which must be determined upon the evidence presented to the court. (*Matter of Davis* v. *Wiener*, 285 N. Y. 537.) The nature of the grievance and the relief which may be granted indicate the questions, whether of law or fact, which must be determined before relief may be granted or denied, and the statute prescribes the procedure to be followed by the court. (§§ 1295 and 1296.) The same grievances may still be brought before the court for redress as before the new article 78 was enacted; the same relief may still be granted and, in general, the questions of law and fact which the court must determine remain the same as the court was required to determine when redress was asked for the same grievances under the earlier statute. Only hampering restrictions and technicalities have been removed.

The provision of the local law that the Board of Trustees *shall* grant, out of the pension fund, to the widow of a

member of the police force, who shall have died from the effects of injuries received in the discharge of police duty, a pension of one-half of his annual salary is mandatory. After the fact of death from the effect of such injuries has been established, the Board of Trustees has no discretion whether to grant or withhold such pension. The local law does not in express terms prescribe how that fact, if disputed, may be established, and who shall determine that fact where there is conflicting proof, or conflicting inferences might be drawn. If the trustees were authorized to act upon a certificate of a physician or medical board which should have presumptive force until challenged by other proof (Cf. *Matter of Hodgins* v. *Bingham*, 196 N. Y. 123); or if the widow's right to a pension under the statute could, ordinarily, be established by proof merely of the existence of physical conditions which can be observed and reported by a lay witness and their effect measured by application of definite objective standards (Cf. *Matter of Monument Garage Corp.* v. *Levy*, 266 N. Y. 339; *Matter of Small* v. *Moss*, 279 N. Y. 288), there might be room for argument that failure to confer upon the Board of Trustees express power to hear and determine the claim of a widow indicates a legislative intent to confer upon the widow the right to compel the Board to grant the pension where the court finds, upon evidence presented to it, that the facts which should entitle the widow to the pension exist, though a contrary finding by the Board is sustained by proof presented to the Board. A finding that a police officer did or did not die from the effects of injuries received in the course of his duties, perhaps, as in this case, many years before death, must, however, often be based upon conflicting proof of lay or medical witnesses and upon inference drawn from such testimony, in regard to which there is room for difference of opinion. The clear intendment of the law is that the Board, before denying a pension, will take proof and then weigh it — usually with the benefit of scientific opinion. Thus the law which places upon the Board of Trustees the duty to grant a pension where

causal relation is established between death and antecedent injury, suffered in the course of duty, by necessary implication also places upon the Board the duty to determine whether the fact which calls for action exists.

The statute also omits any express provision defining the manner in which the Board must proceed in order to obtain the information or proof which will enable it to determine whether such fact has been established. But the nature of the right to a pension conferred by the law, under the specified circumstances, indicates unequivocally that the claimant must have fair opportunity to present both proof and argument to sustain the claim. We need not now define the nature or source of the information or proof upon which the Board of Trustees may act nor the procedure which the Board should adopt in order to give the claimant fair opportunity to establish the claim. It is sufficient now to decide that each claimant must be accorded a fair hearing and consideration of the claim and that, when a determination of the Board is challenged, a record must be presented which will enable the court to review the determination. (*Matter of Elite Dairy Products, Inc.*, v. *Ten Eyck*, 271 N. Y. 488; *Matter of New York Water Service Corp.* v. *Water Power & Control Comm.*, 283 N. Y. 23.)

Where the law imposes upon a body or officer the duty to make a determination after a hearing, the court, in reviewing a determination so made in proceedings instituted under article 78 of the Civil Practice Act, may not substitute its determination, based upon evidence presented to the court, for the determination made by the body or officer clothed with judicial or quasi-judicial power based upon proof presented at the hearing previously held before the Board or officer. The determination in this case by the Board of Trustees that the police officer's death was not the result of antecedent injury might be challenged on the ground that it was capricious, biased and prejudiced or was otherwise tainted by illegality or was not sustained by substantial evidence presented at the administrative hearing

and the court had authority to decide the issues raised by such a challenge. Upon the hearing before the court, the definition of the powers of the court and of the questions it may determine, contained in sections 1295 and 1296, must be observed. Where the questions that may be determined upon the hearing before the court involve issues of fact, new evidence relevant to such issues may be presented and must be considered by the court. Such issue of fact may be involved where the claim is made that an act is arbitrary or a determination is the result of prejudice. Upon *that* issue in this case the referee might properly take evidence extraneous to the record of the proceedings before the Board of Trustees. A court or referee has no power, however, under the statute, to substitute new findings of fact based on evidence presented to it in place of findings made by the Board, upon whom the duty of determining the facts was placed by law, or even to take new evidence in regard to those facts where a hearing has been held as required by law.

We are told, however, that here the parties waived any limitation imposed by law upon the questions which might be considered by the court or referee in reviewing under article 78 a determination of a board or officer and that, in effect, the parties joined in submitting to the referee the questions which otherwise the Board of Trustees alone would have had power to determine. We do not find that the Board of Trustees attempted to waive such limitations and a public board or officer could not, even if it would, shift to a court the responsibility and duty of making determinations which only the board or officer has, under the law, power to make.

For those reasons the Appellate Division correctly decided that the referee was limited to a review of the determination of the administrative body in accordance with section 1296 of the Civil Practice Act and could not make a different determination upon conflicting evidence where the determination of the administrative body is supported by substantial evidence. (Cf. *Matter of Nash*

v. *Brooks*, 276 N. Y. 75; *Matter of Sheridan* v. *McElligott*, 278 N. Y. 59; *Matter of Phillips* v. *McElligott*, 279 N. Y. 792.) It does not follow that the referee was not fully justified in deciding in this case that the determination of the trustees was " capricious, biased and prejudiced and contrary to law and against the weight of the evidence."

The trustees originally rejected the claim of the widow without receiving any evidence to contradict her claim, fortified as it was by a letter from her physician. Without the presentation of any evidence they adopted the reports of the Corporation Counsel and the police surgeon. Though we do not doubt that under proper safeguards they might seek advice and information from the Corporation Counsel and police surgeon, the responsibility of determining the claim was placed solely upon the Board and may not be shifted by the Board. Upon the rehearing they received an affidavit from the police surgeon in which the surgeon reveals information which he obtained while treating the deceased officer. The claimant was never informed that such an affidavit had been presented. We do not now pass upon the question of whether the claimant could or did waive the provisions of section 352 of the Civil Practice Act, but at least the claimant should have been informed that the trustees received and acted upon the affidavit of the surgeon and should have been given opportunity to object to its reception or to controvert the allegations contained therein. Under these circumstances the determination of the trustees should be annulled and the matter remitted to the new trustees to determine, after a new hearing, whether the claimant is entitled to a pension of $1,500.

The orders should be modified in accordance with this opinion, and as so modified affirmed, with costs in all courts to the appellant, and the proceeding remitted to the respondents to proceed in accordance with this opinion.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.