In the Matter of David R. Quirk, Respondent, against Joseph P. Kelly, as Commissioner of Motor Vehicles of the State of New York, Appellant.

Fourth Department, April 8, 1959.

464

*Louis J. Lefkowitz, Attorney-General (Philip J. Fitzgerald and Paxton Blair of counsel), for appellant.*

*Lamb, Webster & Walz (John J. Considine, Jr., of counsel), for respondent.*

MEMORANDUM BY THE COURT. The operator's license of the petitioner was revoked and his certificate of registration suspended pursuant· to the provisions of section 71 (subd. 2, par. [b]) and section 94-a of the Vehicle and Traffic Law. The Motor Vehicle Commissioner had before him certain papers presumably forwarded to his office from the Motor Vehicles Branch of the Department of Highways in Ontario, Canada, accompanied by a certificate of the Registrar of Motor Vehicles that such papers are true copies of the originals on file in the office of the Motor Vehicles Branch of the Department of Highways. Among such papers is a so-called " Certificate of Conviction ". This paper is a printed form and is partially filled out in handwriting. Petitioner's name and address are filled in; opposite the printed word " Offence " is written " Ability impaired "; opposite " Act Violated " — " CC Sec. 223 "; and " Date " — " July 16, 1955 "; " Date of Conviction " — " July 19 "; " name of complainant " (not filled in); " Name of magistrate " — " G. R. Frostes ". Note that the last item is simply the name and not the signature of the Magistrate. Other spaces unimportant for the purposes of this memo are not filled in. At the bottom of the paper is a printed form for a certificate reading as follows: " I hereby certify that the information given by me herewith is a true abstract from the records of the Court held at Bradford on July 19 1955. Dated July 28 1955

Signature of Magistrate<br>or Court Clerk "

No signature of either the Magistrate or the Court Clerk appears on the paper. The space for the signature of the

Magistrate or Court Clerk is entirely blank. The form does not indicate the name or location of the court for which its use was intended. There is no proof, or in fact any evidence, that the paper is a copy of a court record and consequently no proof that the petitioner was convicted of any violation of law. It follows that the Commissioner of Motor Vehicles had no proof before him that the petitioner was convicted of driving while ability is impaired either by alcohol or for any other reason. The determination must, therefore, be annulled. In view of the fact that the commissioner had no certificate of conviction before him, we do not reach the question of whether a certificate of conviction from the Province of Ontario is required to be authenticated in accordance with the provisions of the Civil Practice Act when used by the Commissioner of Motor Vehicles as a basis for revocation of an operator's license.

HALPERN, J. (dissenting). The majority memorandum, in my opinion, misconceives the nature of the document supplied by the Canadian authorities upon the basis of which the commissioner acted. It does not purport to be a formal certificate of conviction issued by the Magistrate. It purports to be, and it is, a certificate by J. P. Bickell, the Registrar of Motor Vehicles of the Department of Highways of Ontario, of the fact that, according to his records, the petitioner had been convicted of the " offence of operating a motor vehicle while ability impaired " in violation of section 223 of the Criminal Code of Canada. Instead of setting forth the facts in a statement signed by him, the registrar supplied the New York commissioner with photostatic copies of the papers which had been filed in his office by the Magistrate, in accordance with the Canadian statute (Ontario Highway Traffic Act, § 65, subd. [1], § 113, subd. [c], par. [ii]), and he attached a certificate signed by him and given under the seal of the Department of Highways of Ontario certifying that the photostats were true copies of the originals on file in his office. This constituted " official notice " to the New York commissioner of the conviction of the petitioner in Canada (cf. Highway Traffic Act of Ontario, § 81, subd. [3]) and it thereupon became the duty of the commissioner to revoke the license of the petitioner in New York State, under section 71 (subd. 2, par. [b]) of the Vehicle and Traffic Law.

The New York statute did not require the commissioner to obtain a formal certificate of conviction from the Magistrate before he issued an order of revocation. The statute says that

he must revoke the license if the holder is "convicted" of one of the offenses specified in the statute. The question before the commissioner therefore was whether the petitioner in fact had been convicted of the offense in Canada and the question for the court, upon review, in this mandamus proceeding is whether the commissioner acted arbitrarily or capriciously in accepting the certified statement of facts by the registrar and in accordingly finding that the petitioner had been convicted of the offense.

I think it is clear that the commissioner did not act arbitrarily or capriciously in accepting the certified statement sent to him by his opposite number in Ontario. In fact, no one questions the authenticity of the factual information thus transmitted. The petitioner himself alleges in his petition that "on or about the 19th day of July, 1955, petitioner, while operating a motor vehicle in the County of Simcoe, Province of Ontario, Canada, was arrested and charged with 'driving while ability impaired'; that at the time of arraignment petitioner was advised by the Magistrate that petitioner was not being charged with driving while intoxicated as that was a much more serious offense" and that "he pled [sic] guilty to the charge and paid a fine of $122.00".

It is difficult to understand how the commissioner can be said to have acted arbitrarily in accepting a factual statement, the correctness of which is admitted by the petitioner.

The majority memorandum stresses the fact that the final paragraph on the back of the card which the Magistrate sent to the registrar, containing the certification by the Magistrate or the court clerk that the information given was a true abstract from the records of the court, was not signed. But this is immaterial, in view of the fact that the card was not intended to be used as a formal certificate of conviction but was to be used only as a report to the registrar of the factual information therein contained, which he in turn was to use as the basis of his action.

I do not agree with the statement in the majority memorandum that there was no signature of the Magistrate anywhere on the card, although I do not consider this material either, in view of the undisputed fact that the card had been officially transmitted to the registrar pursuant to the Ontario statute. So far as can be determined from the photostat, the card was signed by the Magistrate, "G. R. Foster". However, this signature, either through inadvertence or as a matter of common practice, had been placed in the space provided for the name of the Magistrate rather than in the space provided for the signa-

ture of the Magistrate or the court clerk, after the final paragraph containing the certification clause.

The registrar accepted the card in this form as fully complying with the Ontario statute requiring magistrates to report convictions of enumerated types to the Department of Highways (Ontario Highway Traffic Act, § 65, subd. [1]), and he accordingly issued an order prohibiting the petitioner from operating any motor vehicle in Canada for a period of three months. The order stated that the cause therefor was "Conviction for an offence of operating a motor vehicle while ability impaired." A copy of this order was included in the papers forwarded to the New York commissioner. A copy of the order is also annexed to the petition and made a part thereof, without any question being raised in the petition as to the correctness of the statements of fact contained in the order.

In the case of *Matter of Moore* v. *Macduff* (309 N. Y. 35) the papers transmitted by the Ontario registrar to the New York commissioner were identical in form with those in the present case; the data as to the conviction were likewise contained upon a card, upon the reverse side of which the paragraph certifying that the data had been abstracted from the court records was not signed by the Magistrate or the court clerk. A copy of this card was among the papers to which the certificate of the registrar was attached. The Court of Appeals referred to the papers as "competent evidence" of the petitioner's conviction (p. 38).

In the *Moore* case, the revocation was annulled because there was nothing in the papers forwarded by the Ontario registrar to clear up the ambiguity under the Canadian Criminal Code as to whether the petitioner had been convicted of driving while his ability was impaired by alcohol or of driving while his ability was impaired by drugs. In this case, a copy of the information to which the petitioner had pleaded guilty was included in the papers to which the registrar's certificate was attached. The information specifically charged the petitioner with driving a motor vehicle while his ability was "impaired by alcohol". This cleared up the point upon which the *Moore* case had turned (see, also, *Matter of La Victoire* v. *Kelly,* 5 A D 2d 548).

In my opinion, the papers forwarded by the Ontario registrar and certified by him constituted reliable evidence upon the basis of which the New York commissioner had the right (and the duty) to revoke the petitioner's license, even though the certification clause on the card from the Magistrate, which was included in the papers, was not signed by the Magistrate or the court clerk.

As has been pointed out, the petition in the present proceeding does not question the petitioner's conviction of the Canadian offense; on the contrary, it affirmatively alleges it. The grounds advanced in the petition for annulling the revocation, despite the admission of the underlying conviction, were twofold: (1) that the commissioner had acted without holding a hearing; and (2) that the petitioner had not been given the warning required to be given by section 335-a of the Code of Criminal Procedure, upon arraignment, in a similar case in New York State. Neither ground has any merit and they both were abandoned upon this appeal.

The Special Term order annulling the revocation was based on the theory that a semantic difference might be found between the language of the New York statute, driving "while under the influence of intoxicating liquor" [Vehicle and Traffic Law, § 71, subd. 2, par. (b)], and the language of section 223 of the Canadian Criminal Code, driving "while * * * ability * * * was impaired by alcohol". That contention was rejected by the Appellate Division in *Matter of Moore* v. *Macduff*. While the decision of that court was reversed by the Court of Appeals, the reversal was not based upon any disagreement with that part of the Appellate Division's opinion (*Matter of Moore* v. *Macduff, supra*, 283 App. Div. 596, revd. on other grounds 309 N. Y. 35).

Upon his appeal to this court, the petitioner's principal contention is that the commissioner had no right to act upon the basis of the Ontario papers because they were not authenticated in the manner provided in the Civil Practice Act in order to make documents from a foreign country admissible in the courts of this State (Civ. Prac. Act, §§ 395–398-d). This contention is not reached in the majority memorandum, and therefore there is no need to discuss it at length here but a brief analysis will demonstrate the unsoundness of the contention. Concededly, the common-law rules of evidence do not govern the admissibility of evidence in administrative proceedings. The Civil Practice Act requirements do not apply *ex proprio vigore* to administrative proceedings; under section 1 of the Civil Practice Act, the whole act applies only to the "civil practice in all the courts of record of the state". However, in a case in which there was a quasi-judicial hearing before an administrative officer, it might be argued that it was necessary to obtain the authentication of documents from a foreign country in accordance with the Civil Practice Act, in order to satisfy the so-called "legal residuum" rule. Under that rule, there must be a minimum of legally compe'ent evidence to support a quasi-judicial deter-

mination, even through the determination may also be based, in part, upon evidence which would not be admissible in a court trial. This rule originated in New York State, in the case of *Matter of Carroll* v. *Knickerbocker Ice Co.* (218 N. Y. 435) (a workmen's compensation death case). It has been criticized by leading authorities in the field of administrative law and has been condemned by Wigmore in his authoritative work on evidence. (Davis, Administrative Law, §§ 140–145, pp. 447 466; 2 Davis, Administrative Law Treatise, § 1410, pp. 291–303; 1 Benjamin, Administrative Adjudication, pp. 189–194; 1 Wigmore, Evidence [3d ed.], §§ 4b, 4c; 2 Larson, Workmen's Compensation Law, § 79.23; cf. Jaffe, Cases and Materials on Administrative Law, pp. 411–413; Gellhorn and Byse, Cases and Comments on Administrative Law, pp. 1011–1021; Cooper, Administrative Agencies and the Courts, pp. 192–193.)

The better view, approved by these authorities, is that the sole test upon the review of quasi-judicial determinations should be the substantial evidence test and that an additional requirement that there be a residuum of legally competent evidence should not be injected into the process. As Judge LEARNED HAND put it, in language which has been much quoted, the test should be whether " in the end, the finding is supported by the kind of evidence on which responsible persons are accustomed to rely in serious affairs ". (*National Labor Relations Bd.* v. *Remington Rand*, 94 F. 2d 862, 873, cert. denied 304 U. S. 576.) For the present status of the legal residuum rule in New York State, see *Matter of Altschuller* v. *Bressler* (289 N. Y. 463); *Matter of Kopec* v. *Buffalo Brake Beam Iron Works* (304 N. Y. 65, 71); *Matter of Stork Restaurant* v. *Boland* (282 N. Y. 256); *Matter of Lewis* v. *Noyes Co.* (278 App. Div. 222, motion for leave to appeal denied 303 N. Y. 1014); but, see the words " competent proof " in Civil Practice Act (§ 1296, subd. 6) and see *Matter of Reynolds* v. *Triborough Bridge & Tunnel Auth.* (276 App. Div. 388); see, also, 2 Larson, Workmen's Compensation Law, § 79.24, p. 293; Davis, Administrative Law, § 145, p. 458; 2 Davis, Administrative Law Treatise, § 14.12, pp. 313–316.

Even if it is assumed that legal residuum rule is still the law of New York, it is applicable only to the evidence upon a quasi-judicial hearing held pursuant to statutory direction. It has never been held to be applicable to, and by its nature it can not reasonably be extended to, administrative action taken in accordance with statutory authority without a hearing. " The so-called ' residuum rule ' * * * does not control " in a

case of administrative action taken without a hearing (*Matter of Beckley* v. *Pyrke*, 218 App. Div. 352, 354, affd. 245 N. Y. 541). In that case it appeared that the Commissioner of Farms and Markets had made a decision without a hearing, in accordance with statutory authority. This court said: " In so doing, acting in an administrative capacity, he was not entirely bound by jury-trial rules of evidence." He had the right to " resort to what we ordinarily deem ' hearsay ' evidence " and to base his decision upon " authentic reports from reputable sources ", which would " usually not be acceptable * * * in a court of law " (218 App. Div. 352, 353–354). " Obviously, rules of evidence are not applicable to such administrative determinations as are lawfully made without a hearing ". (42 Am. Jur., Public Administrative Law, § 129, p. 461; see, also, 1 Benjamin, Administrative Adjudication, p. 184; cf. *Matter of County of Cayuga* v. *McHugh*, 4 N Y 2d 609; *Matter of Heaney* v. *McGoldrick*, 286 N. Y. 38, 45.)

In this case, the commissioner was authorized and directed to take action, without a hearing (Vehicle and Traffic Law, § 71, subd. 2, par. [b]; *Matter of Drasin* v. *Kelly*, 6 A D 2d 453).

Unauthenticated documents were used by the Commissioner of Motor Vehicles as the basis of license revocations in the cases of *Matter of Moore* v. *Macduff* (309 N. Y. 35, *supra*); *Matter of La Victoire* v. *Kelly* (5 A D 2d 548, *supra*) and *Matter of Howard* v. *Fletcher* (278 App. Div. 799) without any criticism by the courts. In the case last cited, there was a dissent specifically calling attention to the point but the majority upheld the revocation.

It would be absurd on its face to say to an administrative officer who is authorized to act at his own desk, without a hearing, upon information received by him from foreign officials, that he must have the documents authenticated in a manner which would make them admissible into evidence in a court trial. Even if we carried over to the review of administrative action the standard laid down by Judge HAND as to the review of quasi-judicial determinations, all that would be required would be a showing that the administrative officer had acted upon the basis of " the kind of evidence on which responsible persons are accustomed to rely in serious affairs ". Applying that standard here, the commissioner certainly cannot be said to have failed to act as a responsible person dealing in serious affairs, in relying upon the certificate by the Ontario registrar, without requiring it to be authenticated in the manner provided in the Civil Practice Act.

One who is affected by administrative action taken without a hearing may challenge it in a judicial proceeding under article 78, in the nature of mandamus, and, in such a proceeding, the question for the court to decide is whether the action was arbitrary or capricious or without rational basis. " Where the determination of this question requires the resolution of underlying issues of fact, a trial of the factual issues must be held at Special Term (*Matter of Canada Dry Bottling Co.* v. *O'Connell,* 284 App. Div. 370, affd. 308 N. Y. 778; *Matter of Wignall* v. *Fletcher,* 303 N. Y. 435, 440; *Matter of Newbrand* v. *City of Yonkers,* 285 N. Y. 164, 174–176; 1 Benjamin on Administrative Adjudication in the State of New York, pp. 354–356; Jaffe on Administrative Law, pp. 502, 503) ". (*Matter of Arcuri* v. *Macduff,* 286 App. Div. 17, 23; see, also, *Matter of O'Brien* v. *Commissioner of Educ.,* 3 A D 2d 321, appeal dismissed 4 N Y 2d 140, motion for leave to appeal denied 5 N Y 2d 707.) Upon such a trial, the court would, of course, be bound by the common-law rules of evidence. Under this principle, if a petitioner raises a genuine and material issue of fact, he is entitled to have it determined by the court, a referee, or a jury, on the basis of common-law evidence, in the article 78 proceeding (Civ. Prac. Act, § 1295). There is therefore no reason for requiring that in the first instance the administrative action be based upon proof which is so authenticated as to make it admissible in a court trial; all that can reasonably be required is that the proof be sufficiently reliable so that it cannot fairly be said that the administrative officer acted arbitrarily or capriciously in basing his action upon it.

If the petitioner in this case had desired to challenge the finding by the commissioner that he had been convicted of the Canadian offense, he could have done so in this proceeding. On the contrary, as has been pointed out, he not only refrained from challenging the finding but he affirmatively alleged that he had been so convicted. In these circumstances, no useful purpose could possibly be served by annulling the order of revocation and requiring the commissioner to obtain additional authentication of the documents, upon the basis of which he made the finding which the petitioner admits to be true.

I would reverse the order appealed from and dismiss the petition.

All concur, except HALPERN, J., who dissents and votes for reversal and for dismissal of the petition in an opinion. Present — McCURN, P. J., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Order affirmed, with $10 costs and disbursements.