Samuel C. Coleman, J.
Some uncertainty arose as to the precise issue to be decided ¡by me at Trial Term. A retired city fireman brought a proceeding under article 78 to rescind the denial by the Trustees of the Fire Department Pension Fund One-B of his application for a larger pension than he was receiving (Administrative Code of City of New York, art. 1-B, § B19-7.54 et seq.). His claim was that a defect of vision resulting in his disability was caused by an injury suffered while on duty. The Medical Board decided that the disability was not “service-connected” and the trustees agreed with the Medical Board. Upon the petitioner’s application to the court, Special Term thought that the record did not disclose that the matter had been finally determined by the administrative agency and that there was nothing in the record to warrant a -finrlfng that the defect of vision was not the result of an accident sustained in the course of duty. It thereupon entered its order directing that “the issue of fact as to whether petitioner’s *456 eye ailment is service connected shall be tried at a Trial Term of this Court”. Pursuant to that order the issue was tried before me de nova, much as it would have been if the petitioner were free to sue the trustees in a plenary action.
At the conclusion of the trial, both sides, 'believing that the order of Special Term was broader in scope than was intended, and was inadvertently entered, agreed that irrespective of the terms of the order, the matter was to be decided by me by reference to the controlling principles of review of a determination of an administrative agency — a review of limited scope. For it is plain that in a proceeding of this nature, and one involving the kind of question here — the resolution of a “question of fact” — it is not for the court to decide upon the basis of conflicting testimony taken before it whether a given disability came about from an accident sustained while on duty (Matter of Newbrand v. City of Yonkers, 285 N. Y. 164). Special Term can only say from the record before the trustees that there was no evidence at all to sustain their conclusion, or that the evidence was conflicting, or that it compelled their conclusion. If the former were the case it would direct the trustees to do what they should in the first instance have done — grant the application; in either of the latter alternatives, it would dismiss the petition, and the board’s determination would stand. It is only when the court is unable to say what the record before the trustees was, or unable to tell from that record what conclusions the trustees reached and upon what basis, that it refers the matter to Trial Term. But by so doing it does not enlarge the scope of inquiry of the court; that is the same whether the matter is before Special Term or before Trial Term. The referring to Trial Term merely provides an opportunity to go more fully into what occurred before the trustees, so as to enable the court to say whether the determination of the trustees is to be annulled or confirmed. It may permit an opportunity to inquire into whether the trustees were “ prejudiced ”, or “ capricious ”, whether proper procedures were followed, but it does not empower Trial Term to make an independent finding on what brought about the defective vision (Matter of Newbrand v. City of Yonkers, 285 N. Y. 164, supra).
The record before me does not enable me to say what occurred before the trustees or what led them to deny the petitioner’s application. We know only that they did deny; — nothing as to the reasons for denial. And this is not enough.
The record discloses that on September 10, 1962, the Medical Board of the Pension Fund, after reviewing the petitioner’s *457 medical history, concluded 1 ‘ that his eye condition was not caused by the exposure to foam, and the subsequent washing with water. * * * His application for accidental disability retirement pension is denied ’ ’. On March 15, 1963 the trustees “ denied petitioner’s application for accident disability retirement Now, the finding of the Medical Board that the petitioner was disabled was binding upon the trustees (Administrative Code, §§ B19-7.83, B19-7.84). Its conclusion that the eye condition was not caused by the foam incident is not binding upon them; nor was it for the Medical Board to say “ the application is denied ’ ’ (Matter of Bennett v. Board of Trustees, Police Pension Fund, 20 A D 2d 522).
The Bennett case involved a police officer who had applied for a “ service connected disability” pension. The Medical Board of the Police Pension Fund, while finding he was disabled, found against him on the question of “ service connected ” and the trustees of the fund concurred. The sections of the Administrative Code relating to the retirement of firemen, for ordinary disability, and for accident disability, are reproductions of the sections relating to retirement of police officers (police, § B18-42.0, § B18-43.0; fire, § B19-7.83, § B19-7.84, except for obvious typographical errors). The two provisions make it plain that if the Medical Board of one fund or the other decides the disability was “service connected ”, there is nothing for the appropriate Board of Trustees to do except to “ retire such member for accident disability forthwith ”. The sections are silent on the consequences of a Medical Board’s finding against an applicant on the question of “ service connection ”, and here, — on general principles of administrative law and to the advantage of the applicant, there is no determination until the principals of the administrative agency, and not a subordinate body within it, — decide the matter for themselves.
The trustees are then required to make a finding of their own, based on the evidence before it, on the question whether the disability was ‘1 service-connected ’ ’. It cannot delegate that obligation to the Medical Board. Nor can it accept “ the bald finding” of the Medical Board that there is no relation between the foam incident and the defective vision. The trustees may of course give great weight to the conclusion of the Medical Board, but the ultimate conclusion must be theirs upon consideration and deliberation. And here, not only do we not know from the trustees what they had before them and upon what they based their conclusions, but the language of the Medical Board’s opinion implies the power of that board to determine the matter definitively; and (there being nothing *458 to the contrary) implies the trustees’ acquiescence in that assumption of power. The matter then must he remitted to the trustees (1) to show by documents what action they took and upon what basis, including the evidence for their action, or (2) if they accepted the Medical Board’s conclusion as binding, to reopen and to reconsider the matter, taking whatever evidence may be necessary for them to reach their own conclusion “ as to what the cause of petitioner’s disability is and whether that cause arose out of the performance of his duties.” (Matter of Bennett v. Board of Trustees, 20 A D 2d 522, 523, supra.)