Wachtler, J.
(dissenting). When these cases first came to our court, I predicated my dissenting opinion on the premise, that the Taylor Law (Civil Service Law, § 210, subd. 2) deprives an employee of a constitutionally cognizable property right without due process. I see no need to modify substantially my previous dissent (32 N Y 2d 791-795).[1]
Reduced to its most elemental terms the due process clause requires notice and an opportunity to be heard. The constitutional guarantee of procedural due process attaches when there is a governmental deprivation of a legitimate property interest. Once this threshold has been crossed, the opportunity to be heard is constitutionally mandated. (See, e.g., Fuentes v. Shevin, 407 U. S. 67; Bell v. Burson, 402 U. S. 535; Wisconsin v. Constantineau, 400 U. S. 433; Goldberg v. Kelly, 397 U. S. 254; Sniadach v. Family Finance Corp., 395 U. S. 337.) The determination of the form of such a hearing depends on a balancing of the governmental interest against that of the aggrieved party. As the magnitude of the deprivation increases, there is a concomitant increase in the procedural safeguards necessary to satisfy due process. In my opinion the Taylor Law fails to provide sufficient due process protection for the rights of public employees.
It is undisputed that by depriving the employee of his money through a fine and by suspending his tenure rights, albeit temporarily, the Taylor Law deprives the appellants of a constitutionally cognizable property right (see Perry v. Sindermann, 408 U. S. 593; Board of Regents v. Roth, 408 U. S. 564) thereby activating the protections of the due process clause. Unfortunately, in balancing the interests involved the majority underestimates the rights at stake here. Having determined the deprivation to be minimal the majority has no trouble accepting the perfunctory procedures of the Taylor Law. In any event, *568 they conclude that any due process deficiency is rectified by the availability of article 78.
I base my dissent on three grounds: first, as to the majority’s misconception of the interests involved; second, as to the insufficiency of the Taylor Law procedures; third, as to the majority’s misapplication of article 78 which was never designed to serve as an ersatz due process hearing.
The process of balancing the respective interests is vital to the resolution of this controversy. On one end of the scale there is the government’s interest in prohibiting strikes by public employees. The basis of this interest is the concept that public employment is an extension of the sovereign power and, as such, may not be disrupted (e.g., City of New York v. De Lury, 23 N Y 2d 175, 182-184). While I agree with this basic premise, I cannot for the reasons set forth in my previous dissent (32 N Y 2d 791-795) agree that it justifies the deprivation of property in the manner provided by the Taylor Law,
On the opposite end of the scale there is the employee’s interest in his salary and his tenure rights. As to the moneys lost by virtue of the two-for-one payroll deduction, it is true that this does not rise to the level of human travail experienced by the welfare recipients in Goldberg v. Kelly (397 U. S. 254). Nevertheless, our court should not be so cavalier in dismissing the hardship such a fine imposes on the employees and their families. Indeed, the purpose of these sections of the Taylor Law is to inflict punishment and hardship.
Even more important, however, is the suspension of tenure rights. Despite the majority’s assertion that the punishment here is less severe than in Arnett v. Kennedy (416 U. S. 134, supra), in that the employee has not been discharged and the suspension of tenure is of “ no consequence ”, it must be remembered that this suspension of tenure subjects the employee to potentially disastrous consequences.[2] For example, once a *569 teacher is stripped of tenure rights he loses the protections afforded by the Civil Service Law[3] and may be discharged as a probationary employee (e.g., Butler v. Allen, 29 A D 2d 799; Pinto v. Wynstra, 22 A D 2d 914). Moreover, while the suspension of tenure rights lasts for only one year, the potential for dismissal lasts for three years because participation in an illegal strike constitutes “ misconduct ” sufficient to warrant dismissal for cause. (Civil Service Law § 75, subd. 4; § 210, subd. 2, par. [a].) Thus, the sanctions of the Taylor Law subject public employees to the deprivation of considerable property interests which when balanced with the government’s interest cannot be said to be inconsequential. As such, public employees should receive more than token due process.
Until today, our court had consistently espoused the principle that a party being deprived of a right is entitled to an evidentiary-type adversary hearing. In Matter of Hecht v. Monaghan (307 N Y 461, 470) we stated: “ The hearing held by an administrative tribunal acting in judicial or quasi-judicial capacity may be more or less informal. Technical rules of evidence and procedure may be disregarded. Nevertheless, no essential element of a fair trial can be dispensed with unless waived. That means, among other things, that the party whose rights are being determined must be fully apprised of the claims of the opposing party and of the evidence to be considered, and must be given the opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal ”. The procedures of the Taylor Law fall far short of the hearing contemplated by Hecht.
Section 210 (subd. 2, par. [d]) of the Civil Service Law provides that where it appears that public employees have conducted an unlawful strike the executive officer “ on the basis *570 of such investigation and affidavits as he may deem appropriate ”, shall determine whether the Taylor Law has heen violated. The permissive language of this provision coupled with the employees’ inability to examine the basis for this determination raises serious doubts as to the fundamental fairness of this statute. Once he has determined that there has been a strike the executive director determines who took part, again “ on the basis of sueli further investigation and affidavits as he may deem appropriate.” As with the strike determination, the basis is never subjected to the scrutiny of the accused, or for that matter the courts, which seems to disregard the holding in Matter of Heaney v. McGoldrick (286 N. Y. 38) where we held that an aggrieved party should have the right to test the basis of the commissioner’s conclusions. Thus the effect of the Taylor Law is to deny the employees the right to be advised of the evidence against them.[4]
When the executive director notifies the employees that they have been found to have participated in an unlawful strike, and that he is imposing the statutory penalties, he also informs them of their right to object. The employee is permitted to submit “ a sworn affidavit, Supported by available documentary proof, containing a short and plain statement of the facts upon which he relies to show that such determination was incorrect ” (Civil Service Law, § 210, subd. 2, par. [h]).
Upon receiving the objections from the employees, the executive director may follow one of three courses: (1) he may sus *571 tain the objection and reinstate the employees, (2) he may order a hearing to resolve what he considers a question of fact, or (3) he may dismiss the objection, thereby denying a hearing, if he feels that the employees’ proof fails to rebut the statutory presumption that he was on strike. My dissent is directed at the third alternative.
As I noted in my prior dissent, the affidavits submitted in these cases are likely to be ill-prepared (possibly even form affidavits) and provide less than a full and fair opportunity for an employee to present his best possible case. If the employee shows up at the hearing with no more of a defense than he put down on paper, the hearing will be a simple and short matter. On the other hand, many innocent people may have a better defense than was hastily put down on paper, and perhaps some will prove their innocence because they are better able to express themselves in person than in writing.
The majority cites Arnett v. Kennedy (416 U. S. 134, supra) and Mitchell v. Grant Co. (416 U. S. 600, supra) as supportive of its decision sustaining the Taylor Law procedures. Interestingly the majority fails to indicate the due process protections that were afforded in those cases. The Taylor Law procedures pale in comparison.
In Arnett the civil service employee was furnished with written notice and a copy of the charges against him, given a reasonable time for a written answer and supporting affidavits and prompt rendition of a decision (Lloyd-LaFollette Act, U. S. Code, tit. 5, § 7501). Significantly, Civil Service Commission and Office of Economic Opportunity regulations enlarge the statutory provisions by requiring advance notice and a post-removal evidentiary trial-type hearing at the appeal stage (5 CFR 752.202 [f] ; 771.208; 771.210-771.212; 772.305). Under the regulatory scheme, which was upheld in Arnett, the agency is permitted to deny a hearing on appeal only upon some extraordinary circumstance or when the employee did not request a hearing (5 CFR 771.203 [b]). The procedural safeguards afforded to the employee in Arnett include the right to appear before the body making the determination, the right to introduce evidence including testimony under oath, the opportunity to produce and to cross-examine witnesses, verbatim transcription *572 of the hearing and the availability of a copy of the hearing record. These procedures are designed to protect the employees ’ due process rights and are a far cry from the summary determination permitted by the Taylor Law.
Another case relied on by the majority is Mitchell v. Grant Co. (416 U. S. 600, supra) which also upheld statutes being challenged as violative of procedural due process. There the United States Supreme Court sustained the Louisiana sequestration statute since the debtor was given the right to file a contradictory motion to dissolve the writ of sequestration and force a judicial hearing prior to a final adjudication depriving him of his property. Specifically the Louisiana statute required “ the creditor furnish adequate security and make a specific factual showing before a neutral officer or magistrate of probable cause to believe that he is entitled to the relief requested ” (id., at p. 625, Powell, J., concurring; see 6 La. Code Civ. Pro. Ann., art. 3506). Moreover, there the court is empowered to allow damages for the wrongful issuance of a writ of sequestration on a motion to dissolve. This is in marked contrast to the procedure in the case at bar where there is no right to present the merits before a neutral officer or Magistrate, nor is there the opportunity to recover damages for a wrongful deprivation.[5] 6
Not only do the Taylor Law procedures fall to measure up to the protections afforded in Arnett (supra) and Mitchell (supra) they are patently défieient in light , of the procedural due process afforded to the union[6] which is also sanctioned for *573 engaging in an illegal strike, and to public employees in other States[7] who are guaranteed a hearing.
As previously noted, the majority attempts to salvage the process by declaring article 78 a due process panacea. The majority seeks to escape the message of Arnett by relying on the fact that at the Federal level there is no. device such as article 78 which guarantees ultimate review of the actions of public officers who might deprive citizens of their property.
In effect such a holding very nearly reduces due process requirements to a sham. Were we to take the majority’s analysis to its ultimate and consistent conclusion, we would determine that a hearing is never necessary at the administrative level because an article 78 review is always available. Nor is article 78 endowed with more potency merely because it is specifically referred to in the Taylor Law (Civil Service Law, § 210, subd. 2, par. [h]). I suggest that the right of a State employee to judicial review under article 78 would have been precisely the same and no less had specific reference to the article never been included.
As I have previously stated article 78 is not designed to supply due process; it is not an evidentiary hearing but merely an evaluation of what has gone before. If a procedure is constitutionally defective at the administrative level, article 78 cannot rectify it. This becomes evident by examining the origins of article 78.
At common law the actions or inactions of governmental officials were subject to review by the prerogative writs: certiorari, mandamus and prohibition. Each of these writs was designed to perform a specific function and was subject to very technical rules of pleading. With the modernization of our civil practice, article 78 whs adopted to consolidate the prerogative writs into one type of proceeding. Significantly, this modernization only referred to the procedural aspects and was in no way intended to effect any substantive changes (Third *574 Annual Report of N. Y. Judicial Council, 1937, pp. 129-198).
Article 78 as it is presently constituted incorporates the common-law distinctions among the writs. Since the present case involves a property right any determination affecting that right must be characterized as judicial and considered in the nature of certiorari. As such it may be brought pursuant to a portion bf CPLR 7803 (subd. 3) or CPLR 7803 (subd. 4).
Regardless of which subdivision is utilized, if the petitioner is being deprived of a right, due process must be satisfied. As noted by one commentator “ [Jjudicial review will be by certiorari where a hearing, though not prescribed by statute, is required by due process.” (1 Benjamin, Administrative Adjudication, p. 91, n. 12; Matter of New York Edison Co. v. Maltbie, 271 N. Y. 103; Matter of Newbrand v. City of Yonkers, 285 N. Y. 164.) Our court has always held that where a right is involved no essential element of a fair trial may be dispensed with in an administrative proceeding. (Matter of Hecht v. Monaghan, 307 N. Y. 461; Matter of Sowa v. Looney, 23 N Y 2d 329; Matter of Roge v. Valentine, 280 N. Y. 268.) Having set forth the basic tenets involved, it now becomes apparent that article 78 is too shallow a vessel to carry the important constitutional rights with which we are confronted.
The primary vehicle for reviewing judicial or quasi-judicial determination is CPLR 7803 (subd. 4) which refers only to judicial determinations. CPLR 7803 (subd. 3) applies to judicial determination only insofar as the agency acts “ in violation of lawful procedure ”. The inquiry in such a case is whether the official acted in accordance with procedures set forth in a controlling statute. As such it has no relevance in the case before us since the executive director duteously followed the statute. The remaining types of review found in CPLR 7803 (subd. 3), i.e., “ affected by an error of law ”, “ abuse of discretion ” and “ arbitrary and capricious ” are not applicable to a judicial or quasi-judicial determination (see, generally, Weintraub, Statutory Procedures, Governing Judicial Review of Administrative Action, 38 St. John’s L. Rev. 122). Therefore, the only section of article 78 appropriate to review the determinations in this case is CPLR 7803 (subd. 4).
Once subdivision 4 is utilized the court is limited to the record and the scope of review is substantial evidence (8 "Weinstein- *575 Korn-Miller, N. Y. Civ. Prac., par. 7803.07). This must be distinguished from an administrative determination which, need not satisfy due process and where the court is not limited to the record but may conduct a de novo hearing as to issues of fact. As our court stated in Matter pf Newbrand v. City of Yonkers (285 N. Y. 164, 177, supra), “ when a determination of the Board is challenged, a record must be presented which will enable the court to review the determination.” This principle was echoed in Goldberg v. Kelly (397 U. S. 254, 267) where the Supreme Court stated that one reason affidavits were" not sufficient to take the place of an oral hearing with the recipient present was the need to present a reviewing court with a record on which it could base a reasonable decision.
A further significant consequence of the administrative-judicial characterization is the effect on the burden of proof. If the determination is administrative, and subdivision 3 is utilized, the burden is on the petitioner to establish that the agency was arbitrary and capricious or abused its discretion. If the determination is characterized as judicial and subdivision 4 is utilized, the agency must establish that its decision is supported by substantial evidence.
The scope of review apparently anticipated by the majority is “ arbitrary and capricious ”. However, this cannot be applied in the case at bar. As a leading commentator has noted: While “ [t] here are precedents * # * for applying the test of ‘ arbitrariness ’ to a quasi-judicial determination of fact or * * * discretion * * * There are no direct precedents in this state for applying that test to quasi-judicial determinations of law.” (4 Benjamin, Administrative Adjudications, p. 60, n. 79.) Here the finding that no question of fact has been raised, is itself a question of law (Cohen and Karger, Powers of the New York Court of Appeals, § 108, p. 452) thereby precluding review in terms of an “ arbitrary and capricious ” test.
Nor is the appropriateness of article 78 in this context established by the cases relied on by the majority. Matter of Fuller v. Urstadt (28 N Y 2d 315) involved an administrative, not judicial, determination which was subject to review as to whether (p. 318) “ the State has not acted arbitrarily or capriciously.” *576 There we noted that “ The test is the limited one of arbitrariness and does not involve a full evidentiary hearing or the full scope review of administrative quasi-judicial action which must be supported by substantial evidence
Our decision in Matter of Meschino v. Lowery (31 N Y 2d 772) considered the components required in a “ full evidentiary hearing ” in a particular quasi-judicial situation and did not involve the nature of article 78. There the petitioners were afforded a hearing before the board of trustees at which they were permitted to present testimony and documentary evidence. However, they challenged the reservation by the board, of the right to take other evidence in the petitioners’ absence. In upholding this procedure we held that the rights to be advised of the evidence against them and to receive a decision in such a form as to permit adequate judicial review were implicit in the procedures. However, a full-blown adversary hearing was not warranted in that a ‘ ‘ desparate ’ ’ exigency was not involved.
Certainly, the attribute of flexibility is a. desirable goal and must be available for effective administrative proceedings. However, such flexibility must conform to the framework of existing law and due process. The use of article 78 to supplement unconstitutional portions of the Taylor Law will result in confusion[8] and congestion of our judicial system. Furthermore, the procedures of the Taylor Law to the extent that they deny an objecting employee a hearing at some stage are violative of due process as it has been articulated by the United States Supreme Court in recent cases and traditionally by ¥ew York courts. Due process is not satisfied by a mere screening; the aggrieved party must be afforded a hearing before he is finally deprived of his property.
Accordingly, I dissent and would vote to modify in accordance with the above opinion.
Chief Judge Bbeitel and Judges Jasen, Jones, Rabin and Stevens concur with Judge Gabbielli ; Judge Waohtleb dissents and votes to modify in a separate opinion.
*577 In Matter of Sanford, Matter of Splatt and Matter of Winkowski: Upon reargument: Order affirmed, without costs.
In Matter of Godbee and Matter of Collins: Upon reargument: Order affirmed, without costs. Question certified answered in the affirmative.

. When this case was considered previously my dissent focused on the necessity of granting a prior hearing or at the very least a subsequent hearing. Recent decisions of the United States Supreme Court in the area of procedural due procéss have de-emphasized the necessity of a prior hearing as long as there is a hearing at sometime before a final deprivation of property (e.g., Arnett v. Kennedy, 416 U. S. 134; Mitchell v. Grant Co., 416 U. S. 600). Nevertheless, the requirement that procedures comporting with due process be afforded to an aggrieved party at sometime has been consistently and constitutionally mandated.

. In addition to the direct sanctions of the Taylor Law, the employees are stigmatized for having been convicted of participating in an illegal strike since the guilty determinations become a part of their personnel files and may adversely affect their civil service careers in the future (see, e.g., Aster v. Board of Educ. of City of N. Y., 72 Misc 2d 953). The United States Supreme Court has recognized the value of an individual’s good name and reputation and held that a person may not be deprived of it without notice and an opportunity to be heard (Wisconsin v. Constantineau, 400 U. S. 433).

. Section 75 provides that a person against whom removal or disciplinary action is proposed is entitled to a hearing before an appropriate body or officer at which he may be represented by counsel and summon witnesses on his behalf. Moreover, the burden of proving the charges is on those alleging them. (Civil Service Law, § 75, subd. 2.)
Nor is the fear of summary discharge unwarranted. As noted in Sanford’s original brief to our court several employees who had been stripped of their tenure rights have been discharged by the State without a section 75 hearing (Matter of Sanford v. Rockefeller, 32 N Y 2d 788, 795).

. The majority’s assertion that the justification for an employee’s absence from work is peculiarly within the knowledge of the employee may or may not be true, but it certainly is not a persuasive reason for failing to advise the accused of the evidence against him. Perhaps a legally cognizable strike has not even occurred. Or, perhaps the executive director’s compilation of names was carelessly or erroneously determined. There is no provision in the Taylor Law for reviewing such ah error by the executive director.
The possibility for error by the executive director can be demonstrated by an examination of the affidavits submitted by the employees. The objections typified by Godbee asserted that the employee was not on strike because he was not scheduled to work on those days and those typified’by Aubin asserted that the employee was unable to enter his place of employment because of threats by hostile pickets. Clearly these allegations should have been resolved in a hearing. Yet these employees were denied hearings by the executive director’s unilateral determination.

. The Taylor Law merely provides tor reinstatement and reimbursement of back pay (Civil Service. Law, !§ 210). Surely the repaying to the employee of that which is rightfully his cannot be said to deter future wrongful deprivations and may result in abusive use of the antistrike sanctions.

. Pursuant to the regulations promulgated by the Public Employment Relations Board an organization charged with violating the Taylor Law is entitled to a hearing which is open to the public unless otherwise ordered by the board or hearing officer. At this hearing “ [a]ny party shall have the right to appear * * [6] in person, by counsel, or by other representative, and * * * shall have the power to call and examine witnesses, and to introduce into the record documentary and other evidence. Witnesses shall be examined orally under oath ”. “ After completion of the hearing * •' * the hearing officer * • * shall submit the case, including his report and recommendations, to the board. The record shall include the charge, notice of hearing, motions, rulings, orders ” (4 NYCRR 206.6; 206.7).

. See, e.g., 43 Pa. Stat. Ann., .§§ 215.1-215.5; Ohio Rev. Code, §§ 4117.01-4117.05; Mich. Compiled Laws, §§ 423.201-423.206; Minn. Stat. Ann., § 179-61; Conn. Gen. Stat. Ann., § 10-153e.
Notably the Taylor Law’s predecessor statute, the Condon-Wadlin Law, required the appropriate officer or body to conduct a hearing. (Civil Service Law, § 108; L. 1958, ch. 790.)

. Compare Kaplin v. Kinzler (77 Misc 2d 507) with Smyle v. Savitt (73 Misc 2d 259).